**BETTY LEE SHOES, INC., et al.,**
Appellants,

v.

**KARL'S SHOE STORES, LTD., Appellee.**

No. 18624.

United States Court of Appeals
Fifth Circuit.

July 26, 1961.

Rehearing Denied Sept. 29, 1961.

Tom H. Davis, Byrd & Davis, Jack C. Eisenberg, Austin, Tex., for appellants.

John W. Stayton, Black & Stayton, Austin, Tex., for appellee.

Before TUTTLE, Chief Judge, and CAMERON and WISDOM, Circuit Judges.

CAMERON, Circuit Judge.

This appeal presents the question whether the court below erred in entering summary judgment for the appellee Karl's Shoe Stores, Ltd., (defendant) in a diversity action brought by appellants Betty Lee Shoes, Inc., a Texas corporation, and four of its stockholders, Sam Lichenstein, Bernice Lichenstein, R. L. Osborn, Jr., and Bessie Ruth Osborn (plaintiffs). The court below did not write an opinion, merely dismissing the action on the merits, stating that it had found that there was no genuine issue as to any material fact and concluding that Karl's was entitled to a judgment as a matter of law.[1]

The statement in the margin of the issues involved, omitting the record references, is taken from the abstract of the case appearing in appellants' brief.[2]

---

1. The judgment listed what the court considered in arriving at the summary judgment:

    " * * * and the Court having considered the pleadings in the action, the Defendant's Motion for Summary Judgment, together with all depositions, affidavits and exhibits referred to therein and attached thereto, and having considered Plaintiffs' Answer to Defendant's Motion for Summary Judgment and the supplement thereto, together with all affidavits and exhibits referred to therein, and all depositions and stipulations and having heard oral argument of counsel * * *"

2. "Sam Lichenstein is the sole owner of Betty Lee Shoes, Inc., except for a few shares held by his wife and trusted employees. Early in 1956 Sam Lichenstein contacted a representative of Karl's Shoe Stores, Ltd., and suggested that it might be profitable if Karl's would buy Betty Lee. Whereupon Karl's representatives came to Austin.

    "It was first agreed that Karl's would pay 75% of the original cost of inventory not to exceed $55,000.00 total cash outlay and $60,000.00 for the furniture, fixtures and leasehold improvements. Karl's later stipulated, however, that the $60,000.00 would be paid under an 'employment contract' and that $1.00 would be paid for furniture, fixtures and leasehold improvements. * * * *This agreement was then incorporated into two instruments—the purchase agreement (Record) 29 and the 'employment contract.' (Record 30).* The purchase agreement was made subject to an inspection of the stores.

    "The negotiations were clear that the recited price for the furniture, fixtures and improvements would be $1.00 and that Mr. Lichenstein would be given an 'employment contract' whereby he was to be paid $1,000.00 a month for five years.

    " * * * The 'employment contract' was to be non-cancelable. By this procedure Karl's hoped to deduct $60,000.00 of the actual purchase price as 'salary.'

    "After inspecting the stores, Karl's drafted a letter to Mr. Lichenstein accepting the original agreement with certain changes, all to Karl's benefit. This

This statement is followed by an enumeration of the points upon which appellants stake their case:

"It is appellants' position that:

"(1) The 'employment contract' was sufficient to constitute an enforceable contract to make a contract.

"(2) At least a fact issue was raised on whether all the essential terms were included in the 'employment contract'.

letter was personally brought to Austin by two of Karl's representatives and submitted to Mr. Lichenstein for his immediate approval. Mr. Lichenstein was unable to obtain the advice of counsel on such short notice. Consequently, he signed the letter the day it was presented but held in reserve his final determination until such time as he would be able to discuss the matter fully with his attorney. Since the estimated inventory was running higher than anticipated, Sam Lichenstein agreed to an adjustment whereby Karl's was to pay 75% of the original cost of the inventory up to $65,000.00 and 50% of the original cost in excess of $65,000.00.

"During the entire negotiations thus far it was never contemplated by either of the parties that Mr. Lichenstein was to perform any substantial service for Karl's, if any service at all.

"In April of 1956 a contingency of representatives from Karl's came to Austin to consummate the agreement. They took over the operation of the warehouse, shipped out merchandise, had the office fixtures labeled for transport and agreed on the cost price of the inventory. Representatives of Karl's were in the various stores with detailed instruction on the method for taking over the Betty Lee chain operations, Mr. Lichenstein protested over the taking over of his stores by Karl's representatives until he was paid, but was always told, 'don't worry, Sam, we have a deal,' or that 'the deal is closed.' Mr. Lichenstein relied on these assurances.

"Apparently it suddenly came to the attention of Karl's representatives that unless there was some writing concerning the exact nature of Mr. Lichenstein's 'duties,' Internal Revenue would capitalize the so-called 'employment contract.' Therefore, they attempted to alter the deal that they had already made. When Mr. Lichenstein insisted that they abide by their original agreement, Karl's representatives left town, stating that the deal was off.

"This left Mr. Lichenstein in a very precarious position. His inventory was critically low, and his entire organization was disrupted. He had even told his employees that the stores would be sold, relying on Karl's statement 'that the deal was closed.' Mr. Lichenstein attempted to save his business rather than see a lifetime's efforts be completely destroyed. During the next year he managed to stay in business and made arrangements to sell the business elsewhere.

"The operating profits are very definite during the period in which Betty Lee was operating under normal conditions. A very substantial profit was made each fiscal year. Right up until the time of the proposed sale profits were substantial. However, during the period that followed a loss was sustained. As a result of the losses sustained, having relied on Karl's integrity and commitment, Mr. Lichenstein filed this suit to recover a portion of his life earnings.

"The trial court sustained appellee's motion for summary judgment holding as a matter of law appellants could not recover." [Emphasis supplied.]

The agreement appearing on page 29 of the record, referred to in appellants' brief, is as follows:

"Agreement Between
Betty Lee Shoes, Inc. of Austin, Texas
(A Texas Corporation)
and
Karl's Shoe Stores, Lt'd,
(A California Corporation)

"It is hereby agreed between the undersigned that the Betty Lee Shoes, Inc. known as party of the first part and Karl's Shoe Stores, Ltd., known as party of the second part, as follows: Party of the second part shall purchase all of the leasehold improvements and furniture and fixtures that are in the stores listed below as of this date for the sum of $1.00. Also, party of the second part agrees to purchase and party of the first part agrees to sell all of the shoes, hosiery, handbags, etc. at the close of business April 30, 1956 for a sum of 75% of their original cost. Party of the first part represents that this total sum will not run over $55,000.00. Party of the second part agrees to the above purchase subject to the following conditions.

"(1) Approval by party of the second part after inspection of the physical assets of the stores in the following towns: [Omitted.]

"(2) Subject to approval of the party of the second part after examination of all of the leases on the

"(3) The Statute of Frauds does not apply.

"(4) A fact issue was raised on whether appellee was estopped to assert either the Statute of Frauds or that there was no contract.

"(5) A fact issue was raised on whether an action for deceit existed."

We will follow this definition by appellants of the issues involved, and will take up the points upon which they rely for reversal in the foregoing order. We come first to the contention that the employment contract of March 13, 1956 was sufficient to constitute an enforceable contract to make a contract.

■ We do not think so. The general law governing a contract to make a contract is quoted by appellants from 1 Corbin, Contracts, § 29, pp. 67–71:

"* * * It is quite possible for parties to make an enforceable contract binding them to prepare and execute a subsequent documentary agreement. In order that such may be the effect, it is necessary that agreement shall have been expressed on all essential terms that are to be incorporated in the document. That document is understood to be a mere memorial of the agreement already reached. If the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made; and the so-called 'contract to make a contract' is not a contract at all."

above subject stores. (Receipt of the above leases are hereby acknowledged by the second party for their inspection.)
"Approval or rejection by the second party shall be in writing, delivered by registered mail not later than April 15, 1956. Second party in the purchase of the above stores also purchases the name of 'Betty Lee Shoes, Inc.'.
　　　　　"Betty Lee Shoes,
　　　　　　Inc.
　"By /s/　Sam Lichenstein
　　　"Sam Lichenstein
　　　"President　　　3/13/56
　　　"2516 Harris Blvd.
"Witness　　　　"Austin, Texas
"/s/ A. W. Caster
　　"3/13/56
　　　　　　"Karl's Shoe Stores, Lt'd.
　"By /s/　C. S. Litchmann
　　　"C. S. Litchmann　　　·
　　　"750 North Spring Street
　　　"Los Angeles, California
　　　"March 13, 1956
"Witness
"/s/ Dan Bordett
　"March 13, 1956"
The other contract of March 13, 1956 appearing at record page 30, as referred to in appellants' brief, reads as follows:
　　　　　　　　Austin, Texas
"Agreement Between　　March 13, 1956
　　Karl's Shoe Stores, Lt'd.,
　　(A California Corporation)
　　　　　　and
　Sam Lichenstein of Austin, Texas
"It is hereby agreed between the parties hereto that *should agreement dated March 13 1956 between Betty Lee Shoes, Inc. of Austin, Texas and Karl's Shoe Stores, Lt'd. of Los Angeles, California be consummated as to the sale and purchase of the leasehold improvements, furniture and fixtures and inventory as stated in said agreement, Karl's Shoe Stores, Lt'd. will agree to enter into an employment contract between themselves and Sam Lichenstein for a period of five years at a salary of $1,000.00 per month. This contract shall be drawn, satisfactory to both parties* and shall be non-cancellable, it being understood that this contract will only be entered into between the above parties, provided Karl's Shoe Stores, Lt'd. purchase the assets of the Betty Lee Shoes, Inc., of Austin, Texas, as stated in said agreement of March 13, 1956—otherwise, this employment contract will not be entered into.
　　　　　　"Karl's Shoe Stores, Lt'd.
　"By /s/　C. S. Litchmann
　　　"C. S. Litchmann
　　　"General Manager
　　　"750 North Spring Street
　　　"Los Angeles, California
"Witness
"/s/ Dan Bordett
　　"By /s/　Sam Lichenstein
　　　"Sam Lichenstein
　　　"Austin, Texas
　　　"2516 Harris Blvd.
"Witness
/s/ A. W. Caster"
[Emphasis added.]

See also 17 C.J.S. Contracts § 49, and 12 Am.Jur., Contracts, § 25. Texas is not contra. The case chiefly relied upon by appellants, Vise v. Foster, Tex.Civ.App., Waco 1952, 247 S.W.2d 274, 278–279, presented a factual situation altogether different from this one. Nevertheless, the rule set forth above was subscribed to:

"In Radford v. McNeny, 129 Tex. 568, 104 S.W.2d 472, 475 (Com.App., opinion adopted by the S.Ct.) we find this statement of the general rule: '* * * to be enforceable, a contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as the result of future negotiations.' "

The Texas cases relied upon by appellants are collected in Vise v. Foster, 247 S.W.2d at page 279.

■ It is clear that the language of the contract of March 13, 1956, set forth in footnote 2 supra, does not satisfy the requirements spelled out in these authorities. First, it will be noted that the employment contract was to be entered into only if the parties should consummate the agreement of purchase and sale bearing the same date. Next, the employment contract did not describe the duties which Lichenstein was to perform for a period of five years at a salary of $1,000 per month. It did not state whether the employment was to be full time or only part time, the character of duties he was to perform, or the place of their performance, whether his expenses were to be paid if he was absent from his home, or any other details of the work Lichenstein was to do for the $60,000 mentioned in this sentence of the contract. Further, it is clear that the contract of employment, embracing the main consideration as recognized by all parties, "shall be drawn, satisfactory to both parties * * *." No authority is cited which comes anywhere near justifying the enforcement of a writing which, though unambiguous as far as it goes, shows clearly that many of the most important portions of the proposed contract had not yet been defined or agreed to.

It is equally clear that appellants' Point (2) is without sound basis; and that there was no fact issue as to whether all essential terms were embraced in the employment contract. In deciding that issue, we look to the wording of the two writings upon which appellants rely. The language used by the parties in these two documents is not vague, indefinite or ambiguous. It is plain what the parties were agreeing to in those written instructions of March 13th.

Appellee was to pay Betty Lee Shoes $1.00 plus 75% of the cost of merchandise it had on hand April 30, 1956, not to exceed $55,000. In addition, if the conditions of the purchase contract were met, appellee was to pay Sam Lichenstein $60,000 in equal monthly installments for performing certain services for appellee over a term of five years. The contract to be drawn up was to be "satisfactory to both parties." In the second paragraph of appellants' brief, it is stated that the contract between the parties to this litigation "was then incorporated into two instruments—the purchase agreement * * * and the employment contract * * *." An examination of the writings upon which action is admittedly predicated, therefore, demonstrates clearly, as a matter of law, that they do not express an enforceable contract, because they show on their face that agreement had not been reached by the parties on essential elements or, in any event, that the writings did not include those terms.

Appellee pled affirmatively that the agreement upon which appellants based their case was, as a matter of law, unenforceable because it was not executed in conformity with the Texas statutes of fraud.[3] Appellants devote only seven

---

3. Article 3995 of the Revised Civil Statutes of Texas reads in part as follows:
"No action shall be brought in any court * * * unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by

lines of their brief to responding to appellee's argument; contending, as Point (3) of their argument, that the Statute of Frauds does not apply to this case. They cite in support of their position the decision of the Supreme Court of Texas in Wright v. Donabauer, 1941, 137 Tex. 473, 154 S.W.2d 637.[4] Appellee takes the position that the case before us is governed rather by later decisions of the Supreme Court of Texas, Chevalier v. Lane's, Inc., 1948, 147 Tex. 106, 213 S.W. 2d 530, 6 A.L.R.2d 1045 (which discusses Wright v. Donabauer at pages 532–533, of 154 S.W.2d), and Hall v. Hall, 1957, 158 Tex. 95, 308 S.W.2d 12.[5] We agree with appellee's position.

■ By the terms of the writings sued on it is provided that appellee "will agree to enter into an employment contract between themselves and San Lichenstein for a period of five years at a salary of $1,-000.00 per month." It is perfectly clear that Lichenstein could not perform five years of services within one year and that, therefore, this contract, as it is written, could not be performed within one year and that the quoted statute of Texas applies. No contract, embracing what the parties agreed would be contained in it, would be enforceable unless it was in writing and signed by appellants.

Appellants argue Points (4) and (5) supra together, contending that a fact issue was raised on whether appellee was estopped to assert the Statute of Frauds, or that there was no contract; and that a fact issue was raised on whether an action for deceit existed. In support of this phase of the argument they claim

that Karl's representatives managed the transaction throughout (although the approach had been made by appellants); that they went to appellants' stores and moved the central organization in Austin, shipped out some of their merchandise, bossed their employees, changed the locks on the doors and moved considerable of their equipment. They claim further that Lichenstein was "not satisfied with the procedure and protested to Karl's representatives who assured and lulled him into a sense of false security, saying 'Don't worry, Sam, we've got a deal. This deal is going to close, Sam. Stop worrying.' "; and that, relying on these assurances, Lichenstein "reluctantly permitted Karl's representatives to continue their plan." Appellants add that "When Sam Lichenstein refused their last minute effort to further reduce the consideration promised, they walked out on the deal stating they were not willing to stick by Karl's original commitment. Mr. Lichenstein was too trusting, a quality for which he has been penalized."

It is likely that the last sentence summarizes whatever unfortunate consequences ensued to appellants in connection with the prolonged negotiations which followed between them and appellee. But the conclusion stated in that sentence does not support the action appellants brought against appellee. It cannot be doubted that, when Betty Lee approached Karl's in an effort to sell the latter its chain of stores, both parties entered into the tentative arrangement expressed by the two writings of March 13th in good faith. From the start it was plain that Karl's interest in consummat-

some person by him thereunto lawfully authorized:

\* \* \* \* \*

"5. Upon any agreement which is not to be performed within the space of one year from the making thereof."

4. At page 639 of 154 S.W.2d the general rule in Texas as applied in that case is stated thus:
"To condemn a contract as violating the Statute of Frauds, it must appear

from the agreement itself that it is not to be performed within a year after its execution. This contract carries no such provision. Therefore such contract, under the decisions of this Court did not violate Section 5 of Article 3995 R.C.S. 1925."

5. And see also 20–A Texas Jurisprudence, § 42, pp. 318–319.

ing the tentative arrangements was conditioned upon its ability to "expense" the $60,000 to be paid to Lichenstein so that it could benefit by the tax consequences which would follow such a course. All of the spirited negotiations and maneuvering for position which followed in the ensuing weeks recognized this as the chief item which had to be agreed upon.

For example, appellant Lichenstein attached, as an exhibit to his affidavit opposing appellee's demand for summary judgment, a "confirmation" of the agreement between the parties bearing an April date and written by Karl's to Lichenstein, which sets forth the terms which Karl's desired incorporated in the contemplated written agreement. With respect to Lichenstein's proposed employment, it was made clear that the terms which appellee would find "satisfactory" must include a number of provisions defining the character and scope of Lichenstein's duties.[6]

Appellants' lawyer, in his deposition, stated that he "wanted it [the employment contract] written in such words that * * * they couldn't fire him without a reason;" that "it was a matter of getting a piece of paper which made it clear and positive that he wouldn't be fired after they got possession of the business;" that if he "could get Mr. Dougherty [appellee's attorney] to write the duties on paper that were objective enough, that would assure me that after everything was signed up that Karl's couldn't fire Mr. Lichenstein for any half-baked reason, we were ready to go." The lawyer further insisted, for a considerable time during the negotiations, that some sort of security should be given to Lichenstein protecting him in the payment of the monthly salary. The lawyer finally agreed to take Mr. Karl's personal endorsement as such security.

Appellants take the position that " * * it was clearly understood that he [Lichenstein] was not to seriously undertake substantial action that would require his ability and understanding of the retail business;" and that the entire arrangement to employ Lichenstein was nothing but pure "sham," substituting the "employment contract" in lieu of the purchase price for a portion of Betty Lee's assets.

■ The only possible significance of this evidence is that it shows that the minds of the parties never met on an important and essential ingredient of the

---

6. This "confirmation," in the form of a letter from Karl's to Lichenstein, contained, inter alia, these suggested specifications:

"2. Subject to the terms and conditions hereinafter set forth, we hereby employ you as a consultant and advisor to consult with and advise us in connection with store locations, proposed store locations, leases, locations that are in need of retail shoe stores and similar matters that will be beneficial to us in the operation of retail shoe stores in the State of Texas.

"3. You hereby accept such employment and agree to devote so much of your time and attention and your best talents, efforts and abilities to us during the term hereof. You are to perform all of your said services under our supervision and control and pursuant to such instruction as we may give you. * * * We shall have the privilege of having you come to Los Angeles to consult with us at least on one occasion during each calendar year.

* * * * *

"4. The term of your employment hereunder shall commence as of May 1, 1956 and shall continue to and including April 30, 1961. * * *

"5. You agree not to engage in the retail shoe business duing the term hereof as an officer, director, employee or in any other representative capacity and further agree not to render similar services to those you are to perform for us hereunder. * * *

"6. As payment in full for your services, we agree to pay you a salary of $1,000.00 per month commencing on May 1, 1956, said salary to be payable monthly at the end of each month.

"7. You hereby warrant that you are free to enter into this agreement and to render your services pursuant hereto. * * *

"11. It is understood and agreed that our relationship hereunder is that of employer and employee and not that of partners. * * * "

contract the parties had agreed to make. The only contract in writing which was enforceable under Texas laws was the one where the parties contracted that "they will agree to enter into an employment contract," and that a contract "shall be drawn, satisfactory to both parties." It was recognized that the writings of March 13th did not constitute a contract, but merely an agreement to make a contract. The parties worked diligently in an effort to draw up an employment contract which both would be willing to enter into—which would be "satisfactory" to both parties. This they were never able to do. Since the termminology of the two writings of March 13th they both signed was clear and unambiguous and there were no conflicts between any of the provisions, the construction of the meaning of the parties as therein expressed called for the decision of a question of law only. Extrinsic evidence was not admissible under Texas law to vary, alter or amend the terms of these unambiguous written instruments. Anderson & Kerr Drilling Co. v. Bruhlmeyer, 1940, 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217; Texas Electric Ry. Co. v. Neale, 1952, 151 Tex. 526, 252 S.W.2d 451; Tower Contracting Co., Inc. v. Flores, 1957, 157 Tex. 297, 302 S.W.2d 396. And cf. Collins v. Republic National Bank of Dallas, 1953, 152 Tex. 392, 258 S.W. 2d 305; Lewis v. East Texas Finance Co., 1941, 136 Tex. 149, 146 S.W.2d 977; and 2 McCormick & Ray, Texas Law of Evidence, 2d Ed., § 1634, pp. 489–492.

It is plain, therefore, that extraneous evidence was not, in the absence of fraud, admissible to show that an agreement to enter into an employment contract at a salary of $1,000 per month was not an employment contract at all, but a sales contract involving no employment and no salary.

■ Finally, appellants contend that their evidence raised issues of fact as to whether appellee was not estopped to assert the statute of frauds, or to contend there was no contract. They argue likewise that an issue of fact was developed as to whether they were entitled to recover on an action for deceit. An examination of the briefs and of this record of more than five hundred pages fails to disclose any material factual issue as to estoppel or deceit.

The short answer to these contentions, however, is that they were not advanced by the appellants in the court below. Neither the complaint nor any pleading by either party mentioned estoppel or deceit, or referred to any facts tending to support an action involving either. Both estoppel and fraud are required, under Rule 8(c) F.R.Civ.P., 28 U.S.C.A., to be pled affirmatively, and Rule 9(b) requires that the circumstances constituting fraud [7] be set forth with particularity.

■ The court below decided this action on summary judgment. Rule 56(c) requires that judgment be rendered forthwith for the party demanding it "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact * * *." The issue contemplated by this rule is an issue which is raised by the pleadings.

For the reasons given we think that the judgment of the court below was right and it is

Affirmed.

7. *Deceit is encompassed under the title of "Fraud and Deceit" in 20–A, Texas Jurisprudence, pp. 1 et seq.*