**PAN AMERICAN NATIONAL BANK, Appellant,**

v.

**HOLIDAY WINES & SPIRITS, INC., Appellee.**

No. 17272.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 15, 1979.

Rehearing Denied April 12, 1979.

8

Thomas C. McMahon, Saccomanno, Clegg, Martin & Kipple, Ramon E. Williams, Houston, for appellant.

Holtzman, Evans & Urquhart, Jack E. Urquhart, Houston, for appellee.

DOYLE, Justice.

Appellee, Holiday Wines and Spirits, (Holiday) brought suit to recover $19,078.29 from Appellant, Pan American National Bank, (Pan Am) and Mark Mena claiming that the bank wrongfully offset defendant Mena's checking account and that Mena had breached his contract to remove certain cases of wine from bondage. Trial was to the court without a jury. Judgment was rendered for Holiday in the amount of $19,-000.00 against Pan Am and in the same amount in favor of Pan Am over against defendant Mena. Pan Am is appealing the judgment against it. The record on appeal consists only of the statement of facts and transcript. There are no findings of fact or conclusions of law.

Mark Mena opened a business-personal checking account with Pan Am. He was a customs broker and provided the service of paying taxes and duties for customers on imported goods. Mena had borrowed $10,-000.00 from Pan Am on July 18, 1973, securing his note with real property in Harris County, Texas. In January of 1974, Mena borrowed $20,000.00 from Pan Am, securing this note by accounts receivable and furnishing his financial statement. On August 5, 1974, Mena went to the offices of Fulbright & Crooker and got a check for $41,-008.29 to cover charges on wine he was getting out of bond for Holiday. Mena's account was overdrawn $4,701.71 at the time he deposited this check. It is disputed what Mena did after depositing the check. It is agreed that he went to the office of Pan Am's president, where Mena claims he told the president that this money belonged to Holiday. Weldon Peters, Pan Am president, says that Mena merely told him he had taken care of his overdraft.

On August 16, 1974, Pan Am debited Mena's account in the amount of $20,514.15 to cover his note, bring his payments current on his real estate note and cover the overdraft.

Holiday contends that Pan Am wrongfully offset funds in Mena's account which belonged to it. Pan Am argues that it was a holder in due course, had altered its position to its detriment and that superior equities had arisen in its favor since the offset.

Pan Am first alleges that the trial court erred in completely failing to file findings of fact and conclusions of law which has prevented the appellant from making a proper presentation of the case on appeal, and that such failure constitutes reversible error.

On June 2, 1978, appellant Pan Am timely requested that the court make findings of fact and conclusions of law and filed a reminder of this request on June 30, 1978. The court did not make such findings and conclusions and did not acknowledge the reminder.

■ This point of error is without merit and we overrule it. The cases clearly show that an objection to the absence of findings of fact and conclusions of law must be preserved by a bill of exceptions. Rule 372, Tex.R.Civ.P. In *Smith v. Vankirk*, 314 S.W.2d 377 (Tex.Civ.App.—Waco 1958, writ ref'd n.r.e.) the court said:

"In *Spradlin v. Rosebud Feed & Grain Co.*, Tex.Civ.App., 294 S.W.2d 301, 302 (n.r.e.), this court made this statement of the rule, quoting from 3A Tex.Jur., Sec. 507, p. 654: 'The failure or refusal of the court to file findings of law and fact in response to a proper request therefor, or to file them within the time prescribed, will not be reviewed when it is not made the subject of a bill of exceptions, at least in the absence of a showing in the record that appellant or his counsel was misled by the court, and thereby prevented from presenting a bill in reference to the matter until after the time therefor.' "

Further, based upon the provisions of Rule 297, Tex.R.Civ.Proc., merely filing a written reminder for findings and conclusions with the clerk of the trial court is not sufficient. The facts of failing to file findings and conclusions in *Lassiter v. Bliss*, 559 S.W.2d 353 (Tex.1977) are identical with the case before us. In the *Lassiter* case the court said:

"The request for findings of fact and conclusions of law, as well as the subsequent complaint for failure to file under Rule 297, must be presented to the judge. Merely filing the request and complaint with the clerk is insufficient. *Deweese v. Crawford*, 520 S.W.2d 522, 527 (Tex.Civ. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.); [and several other cases]."

Pan Am's second point of error states that the trial court erred in granting judgment to appellee since, as a matter of law, appellant became a holder in due course as to the $41,008.29 item deposited and took same free and clear of all third party claims.

Pan Am alleges it was error for the trial court to give Holiday a judgment because it was based on the holding of *National Indemnity Co. v. Spring Branch State Bank*, 162 Tex. 521, 348 S.W.2d 528 (1961) and that Tex.Bus. & Comm. Code Ann. § 4.208 (1968) supplants the holding of *National Indemnity Co.*, supra. In that case the court held that a bank may not seize funds belonging to a third party which were held in trust by one of its depositors for the third party to satisfy the debt owed by the agent to the bank, even though the bank had no knowledge that the funds belonged to the third party, if there has been no change in the bank's position to its detriment and no superior equities have been raised in its favor.

The Fifth Circuit Court in the case of *South Central Livestock Dealers v. Security State Bank of Hedley*, 551 F.2d 1346 (5th Cir. 1977), had the occasion to examine the law in Texas on the question of a bank's offset in a case similar to the one now before our court, wherein the court said:

Security State argues, however, that Texas' adoption of the Negotiable Instruments Law (NIL) in 1919, see generally, Tex.Rev.Civ.Stat.Ann. arts. 5932–48 (1962), and its adoption of the Uniform Commercial Code in 1965, see generally Tex.Bus. & Comm.Code (Tex.UCC 1968), have nullified this line of Texas cases.

[*Steere v. Stockyards National Bank*, 113 Tex. 387, 256 S.W. 586, 589–92 (Tex.Com. App.1923, opinion adopted); and *National Indemnity Co.*, supra.] We are not persuaded . . . We conclude that in such a case as ours, the Texas Supreme Court would adhere to the *National Indemnity* rule.

. . . it is the bank's knowledge that the debtor has deposited in his account funds belonging to another and thus held in a fiduciary capacity that precludes the offset.

*National Indemnity Co.*, supra, has been cited with approval in several Texas cases since the adoption of the U.C.C. and Texas Business & Commerce Code: *First Nat. Bank in Grand Prairie v. Lone Star Life Insurance Co.*, 524 S.W.2d 525 (Tex.Civ.App. —Dallas 1975, writ ref'd n.r.e.); and *Christian v. First National Bank of Weatherford*, 531 S.W.2d 832 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n.r.e.). Both, however, are cases in which the bank had knowledge that the funds belonged to a third party. There are no cases which expressly limit the rule of *National Indemnity Co.*, supra, to situations where the bank has knowledge, but this can be implied from the passage of the U.C.C. and the holdings in subsequent cases. The rule remaining from *National Indemnity Co.*, supra, seems to be that a bank cannot offset an account when it has knowledge that the funds belong to one other than depositor.

■ Our question is: Did Pan Am have knowledge that the $41,008.29 was Holiday's money? This is a question of fact. On appeal, when findings of fact and conclusions of law are not properly requested and a statement of facts is brought forward, the appellate court must imply all necessary fact findings to support the judgment of the trial court if such findings are supported by the evidence. *Goodyear Tire and Rubber Co. v. Jefferson Construction Co.*, 565 S.W.2d 916 (Tex.1978); *Buchanan v. Byrd*, 519 S.W.2d 841 (Tex.1975); *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609 (1950). And, in the absence of findings of fact and conclusions of law, the appellate court must affirm the judgment of the trial court if the judgment can be upheld on any legal theory that finds support in the evidence. *Lassiter v. Bliss*, supra; *Bishop v. Bishop*, 359 S.W.2d 869 (Tex.1962).

At the trial below testimony was elicited tending to show that Pan Am knew or should have known that the funds in question did not belong to Mena. Typical of the statements tending to show this is the following excerpt from Mena's testimony:

Q. All right. Now, this money, this $41,008.29 was it to be used for an express purpose?

A. That is correct. It was to be used for the Holiday Wine transaction.

.     .     .     .     .

Q. Was there any other purpose for that money?

A. No.

.     .     .     .     .

Q. Did you talk with anybody at the bank, Pan American Bank that day?

A. That day I went to Weldon Peters' office and I told him about the transaction that I was doing, that I was depositing this money for this purpose. And he asked me, 'Do you have anything in it?' And I said, 'Yes, I have my service charge in it.'

.     .     .     .     .

Q. Who was Weldon Peters?

A. President of the Bank.

Q. Had you ever talked with him before about your business?

A. Yes, I knew him quite well.

Q. And he had become familiar with your type of business?

A. That is correct.

The foregoing testimony was strongly disputed by Weldon Peters, Pan Am's president.

"It is well-settled that the trial court's findings carry the same weight as jury findings by which we are bound, if such findings are supported by probative evidence. In a non-jury case, the trial court is the judge of the credibility of the witnesses and the weight to be accorded their testimony."

Central Nat. Bank of McKinney v. Booker, 557 S.W.2d 563 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.); and Norris of Houston, Inc. v. Gafas, 562 S.W.2d 894 (Tex.Civ. App.—Houston [1st Dist.] 1978, no writ), wherein we stated:

"There being no written findings in our case, we look to those presumed in support of the order. If the evidence is conflicting, we are not to substitute our judgment for that of the trial court. Arrow Chemical Corp. v. Anderson, 386 S.W.2d 309, 313 (Tex.Civ.App.1965, writ ref'd n.r.e.)."

Pan Am further submits that Art. 342–705 of the Texas Banking Code, 1943, sustains its position on the question of notice required before a bank would be prohibited from exercising offset. The pertinent portion of the Article reads:

"No Bank shall be required to recognize the claim of any third party to any deposit, or withhold payment of any deposit to the depositor or to his order, unless and until the Bank is served with citation or other appropriate process issuing out of a court of competent jurisdiction in connection with a suit instituted by such third party . . ."

Also urged by Pan Am in support of the notice proposition are certain sections of the Uniform Commercial Code adopted by Texas in 1965 and now encompassed in Tex. Bus. & Comm.Code Ann., such sections being 3.302, 3.303, 3.304, 4.208 and 4.209, which Pan Am argues displace the holding in National Indemnity Co., supra, as to the rights of a bank to deposits in an account without notice of the claims of third parties.

The case of Steere v. Stockyards National Bank, supra, seems still to be the law in Texas concerning notice, offset and equities such as are presented by the facts in the case before us. In the Steere case a livestock commission dealer sold cattle for shippers, deposited the sale proceeds in his personal account and then remitted the net proceeds to the shippers. In the course of such business practice the dealer incurred a personal overdraft and the bank reduced such by applying proceeds deposited in the dealer's personal account from the sale of cattle. The bank knew of the dealer's method of handling his business with it. There the court said that where the bank knew or had reason to know that the deposited funds belonged to third parties, it could not apply such funds to the dealer's indebtedness due the bank. We overrule Pan Am's second point of error.

We are unable to agree with Pan Am's third point of error wherein it claims that Holiday's amount of recovery at most should have been only $10,324.10 rather than the $19.078.29 actually sought by Holiday. The undisputed facts indicate that Pan Am took $41,008.29 from Mena's account and applied it to Mena's personal indebtedness to the bank. Thereafter, Holiday received credits totaling $21,930.00, leaving $19,078.29 as the balance due from the offset. The trial court, without apparent objection by Holiday, awarded only a $19,000.00 judgment, which this court will not disturb.

We have examined Pan Am's fourth point of error and find it without merit. There is testimony in the record to the effect that Pan Am was informed within a few days after the offset in question that the money so offset belonged to Holiday. The fact question of whether Pan Am had altered its position to its detriment or acquired superior equities after such offset was resolved against Pan Am by the trial court. Among the many cases supporting our holding are Cassidy Commission v. Security State Bank, 333 S.W.2d 454 (Tex.Civ. App.—Houston 1960, no writ); First Nat. Bank of Greenville v. First State Bank of Campbell, 252 S.W. 1089 (Tex.Civ.App.— Dallas 1923, no writ).

■ By cross point Holiday contends that the judgment of the trial court should be increased by granting Holiday prejudgment interest from the date of the offset.

Holiday argues that it was entitled to prejudgment interest from the date of the offset because damages were determinable as of a definite time. We agree that this is the general rule. Black Lake Pipe Line Co.

*v. Union Construction Co.,* 538 S.W.2d 80 (Tex.1976); *Maxey v. Texas Commerce Bank of Lubbock,* 571 S.W.2d 39 (Tex.Civ. App.—Amarillo 1978); *Pickens v. Alsup,* 568 S.W.2d 742 (Tex.Civ.App.—Austin 1978, writ ref'd n.r.e.) and *New York Underwriters Ins. Co. v. Coffman,* 540 S.W.2d 445 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.).

However, an examination of the allegations set forth in Holiday's petition reveals that it asked for a judgment of $41,008.29, attorneys fees, interest and court costs, but was only awarded $19,000.00. Thus, a bona fide dispute existed up to the time of the trial court's final judgment as to the amount of damages actually due, and that Holiday's demand was found to be excessive. At the trial Holiday impliedly admitted receiving credit for $21,930.00 of the $41,008.29 in question, since it was seeking only $19,078.29. If Holiday's demand was excessive, it is not entitled to interest on the debt until the date of the trial court's judgment. *Ingham v. Harrison,* 148 Tex. 380, 224 S.W.2d 1019, 1022 (1949); *Warrior Constructors v. Small Business Investment Company,* 536 S.W.2d 382, 386 (Tex.Civ. App.—Houston [14 Dist.] 1976, no writ). We overrule this cross point.

The judgment of the trial court is affirmed.

COLEMAN, C. J., and PEDEN, J., sitting.