Clinton George **BLANCHARD** and Gertrude Blanchard, Plaintiffs–Appellants,

v.

**PEOPLES BANK,** Defendant–Appellee.

No. 87–2928.

United States Court of Appeals,
Fifth Circuit.

May 10, 1988.

Opinion on Denial of Rehearing
June 22, 1988.

---

William L. Bowers, Jr., Dickerson, Hamel, Early & Pennock, Houston, Tex., for plaintiffs-appellants.

C.L. Crawley, Houston, Tex., for defendant-appellee.

Before GARZA, HIGGINBOTHAM, and SMITH, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

George and Gertrude Blanchard sued Peoples Bank alleging that the Bank improperly foreclosed on a certificate of deposit issued in the name of the Blanchards and their daughter, Barbara Gibson. Gib-son pledged the certificate as collateral for business loans she never repaid. The Bank foreclosed on the certificate and the Blanchards sued. We affirm the grant of summary judgment for the Bank, concluding that the Bank had a contracted-for right to foreclose on the pledge of the certificate.

I

In early 1981, George and Gertrude Blanchard sold their home in San Diego, California, and deposited the proceeds of sale in a California bank. Their daughter, Barbara Gibson, convinced them that they would receive a better return on their money if they bought a certificate of deposit from Peoples Bank in Houston, Texas. Following her advice, the Blanchards wired $100,000 to Peoples Bank on April 15, and the Bank issued certificate of deposit number 54767 in that amount. Gibson, who lived in Houston, executed the documents at the Bank. Following her parents' instructions, she had the Bank make the certificate payable to George, Gertrude, or Gibson herself.

In their depositions and affidavits the Blanchards testified that Gibson recalled telling a Bank employee that her name was to be listed on the certificate as a convenience only; that the money belonged only to her parents and not to her. The Blanchards also offered the affidavit of a San Diego attorney, Michael Waterman, in which he described his conversation with a former employee in the Bank's certificate of deposit department. The employee, Bessie Allen, told Waterman that Gibson told her that the money belonged to her parents, and for this reason the interest checks were to be sent to them in California. Allen made these statements to Waterman after leaving her job with the Bank; she has since died.

The certificate itself made no mention of the source of the funds used to purchase it. In fact, the certificate specified that, "For all purposes ... Peoples Bank ... may deem and treat as the absolute owner hereof any depositor named on the face of this certificate." The Bank sent monthly inter-

est checks, tax forms, and renewal notices to the Blanchards in San Diego. The interest checks were made payable to all three owners of the certificate.

Five days after the certificate was issued, and unbeknownst to the Blanchards, the Bank issued a business loan to Gibson in the amount of $6,295.30. Gibson and her husband personally guaranteed the loan and Gibson pledged the certificate of deposit as collateral. Gibson delivered the certificate to the Bank's possession. She continued to borrow from the Bank over the next fifteen months, and by July 23, 1982, she had borrowed over $90,000, all secured by the certificate of deposit.

In late 1982, Gibson made an unauthorized withdrawal from a money market account she held jointly with her parents. Concerned about other possible unauthorized withdrawals, the Blanchards telephoned Peoples Bank on December 2 to request that Gibson's name be removed from the certificate of deposit and all interest checks. A Bank employee sent to the Blanchards a copy of the certificate with Gibson's name stricken, though the original certificate, still in the Bank's vault, remained unaltered. The Bank did, however, issue all subsequent checks only in the names of the Blanchards.

In late January, 1983, the Bank first notified the Blanchards that the certificate had been pledged to secure Gibson's loans. After efforts to collect payments on the loan from Gibson, the Bank cashed the certificate on March 23 and applied the entire proceeds against the debt.

The Blanchards filed this diversity suit against the Bank, alleging several bases of liability: first, that the Bank breached its contract of deposit with the Blanchards; second, that because the Bank knew or should have known that Gibson held the certificate in trust for her parents, it had no right to set off the Blanchards' funds to pay Gibson's debt; and third, that the Bank was negligent in failing to notify the Blanchards when Gibson first pledged the certificate as collateral. The district court granted summary judgment for the Bank, agreeing with the Bank's contention that it could validly set off the certificate against Gibson's debt and finding no possible negligence claim. The court made no explicit ruling on the breach-of-contract claim.

## II

### A

Under Texas law, when a bank's depositor owes a debt to the bank and defaults on the debt, the bank is entitled to set off the amount owed against the funds on deposit.[1] However, the Texas Supreme Court established an exception in *National Indemnity Co. v. Spring Branch State Bank*,[2] ruling that a bank may not exercise its right to set-off if it knows or should know that the funds belong not to the depositor, but to a third party.[3] Moreover, even when a bank has no notice or knowledge of a third party's interests in funds on deposit, the bank may not set off and retain those funds unless it has detrimentally changed its position in reliance on the depositor's ownership of the funds.[4]

The Blanchards' primary argument on appeal is that the *National Indemnity* rule bars the Bank from exercising setoff because the Bank had notice that Gibson was not the true owner of the certificate. The Bank contends that the *National Indemnity* rule cannot be applied here because, first, the Uniform Commercial Code renders the rule inapplicable to certificates of

---

1. *See, e.g., First Nat'l Bank v. Winkler*, 139 Tex. 131, 161 S.W.2d 1053, 1056 (1942).

2. 162 Tex. 521, 348 S.W.2d 528, 529 (1961).

3. The *National Indemnity* rule has been applied in a wide variety of situations, most of which involved savings or checking account deposits. *See, e.g., Energetics, Inc. v. Allied Bank*, 784 F.2d 1300 (5th Cir.1986) (bank offset prior debt of drilling company against company's account that included drilling expenses prepaid by drilling company's client); *South Central Livestock Dealers, Inc. v. Security State Bank*, 614 F.2d 1056 (5th Cir.1980) (bank offset prior debt of feedlot company against account that included proceeds of cattle sales made by the feedlot on behalf of cattle owners).

4. *Citibank v. Interfirst Bank*, 784 F.2d 619, 621 (5th Cir.1986).

deposit, and second, the Bank proved beyond dispute that it relied detrimentally on the ownership statement shown on the face of the certificate.

We need not address these arguments because we find that the Bank had a valid security interest in the certificate that was not limited by the *National Indemnity* rule. In a *National Indemnity* situation the third party owner of the funds subject to setoff has made no agreement with the Bank governing the parties' relative interests in the funds. Here, by contrast, the parties established their interests in the certificate through two contracts: the certificate of deposit, an agreement between the Bank, the Blanchards, and Gibson; and the pledge agreement, a contract between the Bank and Gibson premised on the certificate. Hence, in cashing the certificate of deposit, the Bank need not have exercised any right to set-off. Rather, the Bank could assert its contractual rights under the certificate and pledge contracts.[5] This case turns then on whether the Bank had an enforceable claim against the certificate on the basis of Gibson's ownership and pledge. The problem would be no different if Gibson had simply cashed the certificate on April 20 instead of pledging it as collateral for a loan.

Even assuming that the parol-evidence rule would not bar extrinsic evidence to vary the unambiguous terms of the certificate,[6] the Blanchards have presented no competent evidence of a different agreement with the Bank. The Blanchards' own testimony as to their daughters' recollections is inadmissible hearsay. So, too, are Waterman's affidavit statements about the recollections of Bessie Allen.[7] We are left with a written contract between the Bank and the Blanchards that gave the Bank the right to take the pledge of the CD for the loan.

## B

■ The Blanchards' complaint posed as an alternative theory of liability that the Bank was negligent in failing to inform the Blanchards that Gibson had pledged the certificate for personal loans. The Blanchards build their case on the principle that a party to a contract has a duty to exercise reasonable care in performing its obligations under the contract.[8] In the Blanchards' view, reasonable care under these circumstances required the Bank at least to notify them when Gibson first pledged the certificate.

It is not disputed that the terms of the contract, as contained in the certificate itself, mention no notice requirement; indeed, the opposite was implied in the provision permitting the Bank to treat each named owner as an absolute owner. To conclude that the contract relationship itself carried a duty of notification would be to add a new term to the contract.[9] Such a

---

5. Even if the certificate had not expressly given Gibson a right to pledge the certificate as an absolute owner, the fact that it was payable to George Blanchard *or* Gertrude Blanchard *or* Barbara Gibson would probably suffice to give Gibson such a right. *Cf.* Tex.Rev.Civ.Stat.Ann. art. 342–706 (Vernon 1973) ("A bank may pay a present or future deposit, payable to or on the order of ... any one of two or more persons ... to any one of such joint depositors...."). *See also Leinert v. Sabine National Bank,* 541 S.W.2d 872, 874 (Tex. Civ. App.—Beaumont 1976, writ ref'd, n.r.e.) ("[A] checking account in the names of A or B enables either party to exercise total control over it; either A or B can draw a check on said account to the same extent as if it were A's or B's separate account.").

6. *See Betty Lee Shoes, Inc. v. Karl's Shoe Stores, Ltd.,* 293 F.2d 429, 436 (5th Cir.1961).

7. Allen's statements would not be excluded from the hearsay rule as an admission by the agent of a party opponent, *see* Fed. R. Evid. 801(d)(2)(D), because the rule applies only to statements made "during the existence of the [agency] relationship." *See also* Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence 801–222 n. 16 (Supp.1987) (citing cases).

8. *See Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508, 510 (1947).

9. *See Jim Walter Homes, Inc. v. Reed,* 711 S.W. 2d 617, 618 (Tex.1986) (finding no independent tort arising from breach of good-workmanship warrant in construction of a house); *Group Hospital Services, Inc. v. Daniel,* 704 S.W.2d 870, 877 (Tex.App.—Corpus Christi 1985, no writ) (finding "no independent [tort] duty owed ... outside of that which existed in the contract between the two parties").

result would also be inconsistent with the Banking Code provision permitting the Bank to treat co-owners of a deposit account as absolute owners where their interests are described disjunctively.[10] Thus, we are persuaded that the district court did not err in rejecting the Blanchards' claim of negligence.

AFFIRMED.

GARZA, Circuit Judge, dissenting.

I respectfully dissent. In my opinion this case was not ripe for summary judgment.

A certificate of deposit is a contract between the bank and its depositors. Its provisions determine the manner in which the funds may be withdrawn and is subject to the law of contracts. *Ames v. Great Southern Bank*, 672 S.W.2d 447, 449 (Tex. 1984), *Salazar v. San Benito Bank & Trust Co.*, 730 S.W.2d 21, 23 (Tex.App.–Corpus Christi 1987 no writ). Texas Law imposes on contracting parties a duty to discharge the contract with "care, skill, expedience and faithfulness." *Bernard Johnson v. Continental Constructors*, 630 S.W.2d 365, 368 (Tex.App.–Austin 1982 writ ref'd n.r.e.). A contracting party generally owes a common law duty to perform with ordinary care and skill whether it be a negligent omission or commission. *Hideca Petroleum Corp. v. Tampimex Oil Int'l*, 740 S.W.2d 838, 847 (Tex.App.–Houston [1st Dist.] 1987 n.w.h.).

The majority applies § 3.116 of the Texas Business and Commerce Code and the language on the back of the certificate to conclude Peoples Bank had a contracted for right to offset the certificate. I part with the majority in their failure to recognize the Bank's common law duty of reasonable care when dealing with its customers despite the language of the code and the certificate. Reasonable care certainly does not mean a bank should inquire into every transaction which is drawn on an account written in the disjunctive, but it does mean where a bank has knowledge or should have knowledge of a special relationship which exists between its depositors that the bank should exercise some care in loaning money against that deposit.

Peoples Bank had nothing to lose and everything to gain by loaning money against the certificate. It's evidenced by the times and amounts it loaned money.

10. *See supra* note 5.

Five days after issuing the certificate the first of seven loans were made to AMS International, Inc.[1] or Gibson,

(1) April 20, 1981—Loan to AMS, principal amount $6,295.32, interest 16.25%, term one year;

(2) June 23, 1981—Loan to Gibson, principal amount $25,088.32, interest 17.25%, term 90 days;

(3) September 21, 1981—Loan to Gibson, principal amount $15,052, interest 17.50%, term 90 days;

(4) November 10, 1981—Loan to AMS, principal amount $25,000, interest 17.25%, term 90 days, for renewal and extension of June 23, 1981 note;

(5) December 15, 1981—Loan to AMS, principal amount $25,087.11, interest 17.50%, term 90 days, for renewal and extension of September 21, 1981 note for $15,000;

(6) February 4, 1982—Loan to AMS, principal amount $70,000, interest 17.50%, term six months, for renewal and extension of November 10, 1981 and December 15, 1981 notes; and

(7) July 23, 1982—Loan to AMS, principal amount $90,500, interest 19.50%, term due January 19, 1983, for renewal and extension of February 4, 1982 note for $70,000.

Peoples Bank went about its business routinely extending the notes until the entire $100,000 certificate was pledged. Never did they notify the Blanchards of their or Gibson's actions. The certificate was issued April 15, 1981 and was automatically renewed every 180 days. Had the Bank notified the Blanchards of Gibson's loans at their first renewal, the Blanchards would have had the opportunity to cash the certificate and still have approximately $50,000 for themselves. Instead, the Bank proceeded without regard to the Blanchards' interest. This was all done despite the Bank knowing the funds had been transferred from California where the Blanchards lived, a Bank officer's knowledge of the source of the funds, the Bank's prior business dealings with Gibson and their knowledge that the Gibsons had no assets to account for a $100,000 certificate. Additionally, all interest checks were mailed to the Blanchards in California and when one check was misplaced the bank sent the Blanchards an indemnity agreement which

1. AMS is a company which Gibson and her husband are officers. Gibson personally guaranteed the loans of the company.

only they signed, all notices of renewal and IRS forms were mailed only to the Blanchards and when the Blanchards moved, the Bank was informed by Gibson of their new address. Finally on December 2, 1982, the Blanchards called the Bank to instruct them to remove Gibson's name from the certificate. The bank informed them it would be done and a copy of the certificate was sent to the Blanchards with Gibson's name marked through it. The Bank issued the December interest check with Gibson's name on it, but marked it out before sending it to the Blanchards. The January, February and March of 1983 interest checks reflected only the Blanchards names.

This conduct at least presents a question for the jury as to the ownership of the certificate. *See Pan American Nat'l Bank v. Holiday Wines*, 580 S.W.2d 7, 10 (Tex.Civ.App.–Houston [1st Dist.] 1979 writ ref'd n.r.e.). When Gibson's name was marked off the certificate it created an ambiguity as to its ownership and when the certificate of deposit department of the Bank was willing to do so without hesitation, is conduct which could be construed as evidence of another agreement the parties had that is not evident on the face of the document. This reflects some notice on the Bank that it was aware actually or constructively of the trust character of the deposit which would prohibit the Bank from offsetting the depositor's debt against funds held by the depositor in trust for another. *Allied Bank West Loop, N.A. v. C.B.D. & Associates, Inc.*, 728 S.W.2d 49 (Tex.App.–Houston [1st Dist.] 1987 writ ref'd n.r.e.); *National Indemnity Co. v. Spring Branch State Bank*, 162 Tex. 521, 348 S.W.2d 528 (1961).

To me the conduct of Peoples Bank under these circumstances was not one of reasonable care. This was a mismanagement situation where the loan department did not know what the certificate of deposit department was doing or has done. The Bank should not be allowed to prosper by strictly reading § 3.116 and failing to recognize their duty of reasonable care with their customers. I would REVERSE the summary judgment and let the jury decide who owned the certificate and determine what the true agreement was between the Blanchards, Gibson and Peoples Bank.

### ON PETITION FOR REHEARING

Before GARZA, HIGGINBOTHAM, and SMITH, Circuit Judges.

**PER CURIAM:**

In their petition for rehearing, appellants now suggest that summary judgment was improper because they never had a binding contract with the Bank. According to appellants, there was no contract because the Bank never notified them of the provision that permitted the Bank to treat each person named on the face of the certificate— including Gibson—as an "absolute owner." The summary judgment evidence, however, indicates that as a matter of law the appellants authorized Gibson to obtain a certificate of deposit naming herself as a co-owner with the appellants. Moreover, the appellants fully acknowledged the existence of the contract in their arguments to the district court, questioning only whether the Bank adequately discharged its obligations under that agreement. For these reasons, the petition for rehearing is DENIED, although Judge Garza would grant the petition.