**METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff**

v.

**Maria P. BARRETTO and Vanessa P. Barretto, a Minor, Defendants**

No. H–99–0083.

United States District Court,
S.D. Texas,
Houston Division.

Nov. 20, 2001.

Jacqueline R. Peterson, John B. Rizo, Sr., Kirkpatrick & Lockhart, LLP, Dallas, TX, for Plaintiff.

David E. Bensey, Waldron, Schneider, et al., Houston, TX, Nathan A. Hardee, The Hardee Law Firm, Pearland, TX, Matthew W. Brown, Markle Ramos, et al., Houston, TX, for Maria P. Barretto.

### MEMORANDUM AND ORDER

HARMON, District Judge.

Pending before the Court in the above referenced interpleader action,[1] filed because of rival claims brought by the Decedent's mother, Defendant Maria Barretto, and minor daughter, Defendant Vanessa Barretto, for $1,000,000 in life insurance

---

**1.** This action is a rule interpleader, brought under Fed.R.Civ.P. 22 and 28 U.S.C. § 1332, because MetLife is a foreign corporation and the two claimants are citizens of Texas. *Travelers Ins. Co. v. First Nat'l Bank of Shreveport,* 675 F.2d 633, 637 n. 9 (5th Cir.1982); 7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1710 at 546–54 (2d ed.1986).

proceeds payable as the result of the death of Alvaro Martin Barretto on December 18, 1997, is Plaintiff Metropolitan Life Insurance Company's ("MetLife's") motion for summary judgment (instrument # 51).

Vanessa Barretto was dismissed from this suit by agreement of the parties on August 24, 2000(# 44).

With supporting documentary evidence, Metlife explains that Maria and Vanessa Barretto settled their dispute over the life insurance proceeds around February 25, 1999. As a result, part of the funds were put in trust for the benefit of Vanessa, some were used to pay estate and inheritance taxes and related penalties and interests, and the rest were distributed to Maria Barretto. MetLife paid the insurance proceeds plus applicable interest in accordance with the claimants' agreement, and in return received from Maria Barretto a Partial Release of claims, including the following relevant paragraph:

1. Maria P. Barretto in her own right and on behalf of her heirs, executors, administrators, attorneys, successors and assigns and anyone claiming through her hereby release and forever discharge MetLife, its past and present officers, directors, employees, sales representatives, agents, independent contractors, attorneys, successors, assigns, subsidiaries, affiliated entities, and each of them (collectively "Releases") from any and all claims, causes of action, rights, contracts, damages, benefits, attorneys' fees, judgments and demands of any kind whatsoever which Maria P. Barretto may have or claim to have regarding the payment of the principal amount and contractual interest of the insurance policy referred to above. It is expressly agreed and understood that Maria P. Barretto does not release any claim against MetLife for damages for any alleged failure on the part of Met-Life to more timely pay the proceeds of the policy, including specifically, without waiving the general meaning of the foregoing, those claims expressed in Maria P. Barretto's Counterclaim against MetLife filed in the lawsuit referred to above.

Tab A of Appendix, Ex. 4, Partial Release at 1–2 (emphasis added). Nevertheless in this suit Maria Barretto has pursued counterclaims against MetLife for more than a claim of timeliness of payment; she has also asserted claims under Article 21.21 of the Texas Insurance Code and the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA"), as well as causes of action for misrepresentation, negligent misrepresentation, breach of implied warranty of fitness of the insurance policy purchased by the decedent, fraud, negligence, breach of contract, breach of good faith and fair dealing, unconscionable conduct for failure to timely pay, and untimely payment per Article 21.55 of the Texas Insurance Code. The basis for all these claims, besides the one for untimely payment, is Maria Barretto's contention that payment of the life insurance proceeds caused her to have to pay estate and inheritance taxes that she otherwise would have avoided.

MetLife moves for summary judgment on all Barretto's counterclaims. All the claims besides the one for timely payments should be dismissed based on her Partial Release. MetLife points out that Maria Barretto agreed to the release with full knowledge, was represented by counsel, and read and understood the release. Affidavit of John B. Rizo, Sr., Tab A, Ex. 4.

The untimeliness claim must be dismissed because MetLife properly filed the instant interpleader suit when multiple claims arose for the single fund of insurance proceeds. As the stakeholder, MetLife should be dismissed from the lawsuit

and awarded its fees. *Connecticut General Life Insurance Co. v. Thomas,* 910 F.Supp. 297 (S.D.Tex.1995). An interpleader suit serves to shield an uninterested stakeholder from the costs of unnecessary, multiple litigation. *Equitable Life Assurance Society v. Jones,* 679 F.2d 356, 358 (4th Cir.1982)(defining as "the principle of interpleader" that the stakeholder is "not to be obliged to be at the expense and risk of defending an action; but on giving up the thing . . ., he is to be relieved, and the Court directs that the persons between whom the dispute really exists shall fight it out at their own expense."). "Were the defendants in an interpleader action permitted to carry forward with counterclaims against the stakeholder based upon the same interpleaded funds, the very purpose of the interpleader action would be utterly defeated." *Commerce Funding Corp. v. Southern Financial Bank,* 80 F.Supp.2d 582, 585 (E.D.Va.1999)(citing and quoting *Jones,* 679 F.2d at 358). *See also Cable Communications Network, Inc. v. Aetna Casualty & Surety Co.,* 838 S.W.2d 947, 951 (Tex.App.—Houston [14th Dist.] 1992)(applying Texas law)("An insurance company should not be compelled to act as judge and jury at its own peril when faced with such [competing] claims. . . . Interpleading the funds is the only realistic remedy."). *Cf. Daniels v. Equitable Life Assurance Soc. of the U.S.,* 35 F.3d 210, 214–15 (5th Cir.1994)(where an interpleader is found proper, breach of contract and tort claims are collaterally estopped).

The claims of untimeliness of payment against MetLife are the result of its utilizing the protections afforded by the interpleader. Under interpleader rules and the interpleader statutes, MetLife should be shielded from Maria Barretto's counterclaims, which should be dismissed. MetLife should also be awarded attorney's fees. *Corrigan Dispatch Co. v. Casa Guzman, S.A.,* 696 F.2d 359, 364 (5th Cir.1983)(district court has authority to award costs, including attorney's fees, in interpleader actions); *Murphy v. Travelers Ins. Co.,* 534 F.2d 1155, 1164 (5th Cir.1976)("as a general rule, when an interpleader action is successful, the court often awards costs, as well as attorneys' fees, to stakeholder").

MetLife insists that it had no duty to advise Maria Barretto about the tax consequences of the life insurance policy to the estate of the insured. Moreover the decedent was a successful businessman fully capable of handling his personal affairs in the manner he chose. Affidavit of John B. Rizo, Tab A, Ex. 1. Decedent failed to create a will, which might have minimized estate taxes. Affidavit of John B. Rizo, Tab A, Ex. 3; *see also* 26 U.S.C. § 2206.

Furthermore, MetLife argues that Barretto's misrepresentation and negligence claims should be dismissed because the only supporting evidence is hearsay and thus inadmissible. The decedent cannot testify as to what representations were made to him about the insurance policy he purchased or what he relied upon in making that purchase. Fed.R.Evid. 801 and 802; *Blanchard v. Peoples Bank,* 844 F.2d 264 (5th Cir.1988).

Nor does Barretto have standing to bring the Article 21.21 or DTPA claims. Barretto is not the owner of the policy, did not pay the premiums under the policy, and is not the insured under the policy, but only a beneficiary under the policy a third party to the insurance contract and therefore lacks standing to assert a claim for violation of Article 21.21. *Allstate Ins. Co. v. Watson,* 876 S.W.2d 145, 149–50 (Tex. 1994); *Tamez v. Certain Underwriters at Lloyds, London International Acc. Facilities, Inc.,* 999 S.W.2d 12, 21–22 (Tex. App.—Houston [14th Dist.] 1998)("The supreme court has held that a third party

claimant lacks standing to bring claims against an insurer under Section 16 of article 21.21.").

Furthermore, Barretto is not a "consumer" and thus lacks standing to bring claims under § 17.50 of the DTPA. "Consumer" status is also required for nearly all Plaintiff's claims under § 17.46(b), i.e., (1) that the insurance in question that was being purchased had characteristics or benefits which it did not have (§ 17.46(b)(5)); (2) that the insurance being purchased was or will be of a particular standard or quality when in fact it was not (§ 17.46(b)(7)); and (3) that MetLife failed to disclose material facts which were known at the time of the transaction and that the omission was intended to induce the transaction which would not have occurred had the information been disclosed (§ 17.46(b)(23)). Since Barretto is not a "consumer," these claims fail. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 387 (Tex.2000)(plaintiff cannot state a cause of action under Article 21.21 for the violations of DTPA subsections § 17.46(b)(5), (7),(9), and (23), which by their terms require consumer status). MetLife also notes that there is authority for the proposition that a DTPA claim does not survive the death of the consumer. *See, e.g., First National Bank of Kerrville v. Hackworth*, 673 S.W.2d 218, 221 (Tex. App.—San Antonio 1984).[2]

In response, Maria Barretto insists that the language in the Partial Release, which references her counterclaim in this action, clearly indicates that she did not release any of the claims in her countersuit, which predates the release. She also insists that with respect to her cause of action for negligence in the sale of the life insurance policy, the release does not address it and therefore cannot encompass it.

As for MetLife's "interpleader defense," Barretto maintains that an interpleader was not necessary here. MetLife did not comply with its own policy provisions to pay the proceeds timely and then ignored the fact that there was no longer a dispute between the claimants that would warrant an interpleader. Barretto further contends that MetLife's grounds for summary judgments as they relate to protection of an interpleader are utterly conclusory and not supported by evidence or affidavit.

Barretto further asserts that the only evidence presented by MetLife in support it its contention that its agent owed no duty to the deceased with respect to estate planing is a conclusory statement by its attorney, John Rizo, who has not designated himself as an expert in estate tax planning or insurance sales. Barretto asks the Court to withhold ruling until her attorney can depose Rizo about his qualifications in this field.[3]

MetLife's reliance on *Blanchard* to support its argument that it is entitled to summary judgment because its allegations of misrepresentation and negligence re-

---

**2.** This Court notes that Texas appellate courts disagree over the issue of whether a DTPA action survives the death of the consumer. *See, e.g., Thomes v. Porter*, 761 S.W.2d 592, 594 (Tex.App.—Fort Worth 1988, no writ) (claims for breach of warranty and wrongful acquisition of property by fraud or deceit survived); *March v. Thiery*, 729 S.W.2d 889, 896 (Tex.App.—Corpus Christi 1987, no writ) (heirs could not bring an action for breach of warranty under the DTPA); *Mahan Volkswagen, Inc. v. Hall*, 648 S.W.2d 324, 332–33 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.) (action for personal injury in death survived). The Texas Supreme Court has not yet addressed it. *Shell Oil Co. v. Chapman*, 682 S.W.2d 257, 259 (Tex.1984).

**3.** The Court notes that substantial continuances have already been granted in this action, and the motion for summary judgment has been pending for approximately three months. There should be no need for additional time.

quire unavailable or inadmissible hearsay from the decedent is misplaced, Barretto maintains. She asserts that can rely on the testimony of the salesman/agent and the facts, i.e., why would the deceased purchase an insurance policy that cost his heirs hundreds of thousands of dollars in benefits, why would he not have been advised that purchasing the life insurance policy in the name of his corporation make the policy taxable, why would a sophisticated business man not have purchased the policy in his own name in order to save his family nearly $200,000 in taxes?

Although Barretto bears the burden of proof on her counterclaims, she submits no evidence to support her conclusory allegations.

In reply, MetLife emphasizes that Barretto fails to provide any legal or factual support for her opposition to the motion for summary judgment and thus to meet her burden to present affirmative evidence to defeat it. The language of the release specifically limits unreleased claims to those for timely payment. Barretto presents no affidavit evidence of any other interpretation.

As for the need for an interpleader, Metlife contends that it was appropriate because there was a dispute among the parties that was only resolved in February 1999, after this action was filed on January 11, 1999. The documentation resolving the dispute, signed by Barretto, evidences the existence of the dispute and refers to the interpleader filed earlier by MetLife. Moreover, observes MetLife. Tab A, Ex. 3. MetLife emphasizes that Barretto has failed to cite a single case or other authority supporting her claim that MetLife owed the deceased any duty to provide him with estate tax advice. Nor has she overcome the hearsay issue because she has not provided a single bit of nonhearsay evidence, not to mention any evidence at all,

to support her claims. Barretto also fails to address MetLife's arguments about her Article 21.21 and DTPA claims. Thus MetLife requests the Court to grant its motion in its entirety, dismiss Barretto's claims with prejudice, and award MetLife its attorney's fees.

After reviewing the record and the applicable law, this Court concludes that MetLife's motion for summary judgment should be granted.

 The Court agrees with MetLife that Barretto's Partial Release precludes her bringing claims other than late payment against MetLife. Moreover, as a matter of law it agrees that she is not a consumer and therefore lacks standing to assert her counterclaims under the DTPA. She is merely a beneficiary and not a party to the insurance contract and thus also lacks standing to sue under Article 21.21 of the Texas Insurance Code. The Court further agrees that MetLife had no duty to advise the deceased or Maria Barretto about the tax consequences of the life insurance policy to the estate of the insured and therefore her negligence allegations must fail.

 An interpleader action generally has two stages in the district court: (1) the court determines whether the requirements for rule or statutory interpleader action have been met by deciding if there is a single fund at issue and whether there are adverse claimants to that fund; and (2) if the district court concludes that the interpleader action was properly brought, the court determines the respective rights of the claimants. *Rhoades v. Casey,* 196 F.3d 592, 600 (5th Cir.1999), *cert. denied,* 531 U.S. 924, 121 S.Ct. 298, 148 L.Ed.2d 240 (2000). Here, as is reflected in the record, this Court finds that there was a single fund, the proceeds of life insurance policy, and that at the time of the filing of

this action the claimants, who were of diverse citizenship to that of MetLife in compliance with Rule 22, had not formally settled their dispute over their respective claims to that fund. Thus the interpleader was properly and justifiably brought. The parties have reached an agreement regarding their respective rights to the proceeds, and MetLife, as the stakeholder, has distributed the proceeds according to that agreement.

■ As for the alleged delays in payment, because interpleader has its roots in equity, equitable doctrines such as laches apply. *Matter of Bohart,* 743 F.2d 313, 325 (5th Cir.1984). The Fifth Circuit has held that three elements must be present to support a finding of laches: (1) delay in asserting a right of claim; (2) that the delay was inexcusable; and (3) that undue prejudice resulted from the delay. *Id.,* citing *Armco Inc. v. Armco Burglar Alarm Co. Inc.,* 693 F.2d 1155, 1161 (5th Cir.1982).

MetLife's complaint explains that after the death of the insured on December 18, 1997, MetLife received a claim on the insurance proceeds from Maria Barretto. On April 28, 1998, it received a letter from Vanessa Barretto's attorney stating that Vanessa was contesting Maria's claim. Maria and Vanessa Barretto then litigated their dispute in a suit styled *In re: Estate of Alvaro Barretto,* Cause No. 295,591, Probate Court No. 1, Harris County, Texas. In a letter dated September 21, 1998, they claimed to have resolved their dispute and to have agreed upon a means of distributing the life insurance proceeds. Because Vanessa was a minor, MetLife asked that a guardian ad litem be appointed for her and that a court of competent jurisdiction approve the settlement. It also asked each to sign a release of liability on the policy in favor of MetLife upon distribution of the proceeds. When Maria and

Vanessa Barretto did not comply, MetLife filed this interpleader action on January 11, 1999, asking this Court to appoint a guardian ad litem for Vanessa, accept the policy proceeds into the court's registry and release the stakeholder, and award MetLife fees, costs of court and expenses incurred in this action. None of these facts has been disputed by Barretto.

■ Maria Barretto has failed to produce any evidence of laches and failed to meet her burden on summary judgment. Moreover, from the record before it, the Court finds no unreasonable or inexcusable delay here. MetLife's demands for a guardian ad litem and court approval of a settlement were reasonable and sensible ways to protect both the proceeds and the claimants' rights. Moreover, by asserting unmeritorious claims, Maria Barretto, herself, protracted the period of litigation.

■ A district court has the authority and the discretion to award attorney's fees in successful interpleader suits to a disinterested stakeholder whenever it is fair and equitable to do so. *Rhoades,* 196 F.3d at 603, *citing Corrigan Dispatch,* 696 F.2d at 364. The fee is usually modest because "all that is necessary is the preparation of a petition, the deposit in the court or posting of a bond, service on the claimants, and the preparation of an order discharging the stakeholder." 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1719. The Fifth Circuit requires only that the award be reasonable. *James Talcott, Inc. v. Allahabad Bank, Ltd.,* 444 F.2d 451, 468 (5th Cir.1971). Commentators suggest five factors relevant to awarding fees in an interpleader case: (1) whether the case is simple; (2) whether the stakeholder performed any unique services for the claimants or the court; (3) whether the stakeholder acted in good faith and with diligence; (4) whether the

752

services rendered benefitted the stake-holder; and (5) whether the claimants improperly protracted the proceedings. 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1719.

 Here the Court finds the case was relatively simple, with the claimants resolving their dispute fairly quickly and MetLife distributing the proceeds in accordance with their agreement. Barretto has not provided any evidence that MetLife was in anyway interested in the insurance proceeds, that it did not act in good faith or with reasonable diligence or that Met-Life benefitted from the interpled funds. Barretto, however, has protracted the proceedings by pursuing a countersuit that was in large part barred by her Partial Release and as a matter of law by her lack of standing to assert the claims. Thus she has probably increased the fees and costs that she will be required to pay. The Court finds that an award of costs and fees to MetLife is appropriate. Because there is no specific request in the file, the Court

ORDERS that MetLife shall file within ten days of receipt of this order an appropriate motion for fees and with supporting affidavit and records. Maria Barretto shall file any objections within ten days of receipt of these materials. The Court further

ORDERS MetLife's motion for summary judgment is GRANTED. After the Court rules on the matter of fees and costs, it will issue a final judgment.