## NATIONAL INDEMNITY COMPANY V. SPRING BRANCH STATE BANK

No. A-8320. Decided July 26, 1961
(348 S. W. 2d Series 528)

522

*Powell, Rauhut, McGinnis, Reavley & Lockridge, Morgan Hunter* and *Larry E. Temple,* all of Austin, and *William A. Brown,* of Houston, for petitioner.

*Duncan Neblett,* of Houston, for respondent.

MR. JUSTICE GREENHILL delivered the opinion of the Court.

This is a suit by National Indemnity Company, herein called the insurance company, against the bank to recover funds which had belonged to the company and which were on deposit in the bank in the account of one of the agents of the insurance company. The bank had seized the funds to offset a debt owed to it by the agent. The trial court overruled the insurance company's motion for summary judgment. When the company stated that it had no further evidence to offer, judgment was entered for the bank. That judgment was affirmed by the Waco Court of Civil Appeals. 343 S.W. 2d 539.

The facts as developed on motion for summary judgment, as relevant here, were these: J. N. Mullan and wife had a joint account in the Spring Branch State Bank which they used for their business and personal affairs. Mullan was general agent for Texas for the National Indemnity Company, the plaintiff below, the petitioner here. In his agency contract, it was agreed that Mullan could collect premiums and hold them as trustee for the company. He was to deduct his commission and remit the balance to the company.

In June of 1956, Mullan collected $3,091.21 in premiums. Mullan was entitled to a commission, and $2,317.14 remained which belonged to the insurance company. It was held in trust by Mullan. He deposited the entire sum in his account at the bank. We shall assume that the deposit was made with the consent of the insurance company under Mullan's agency agreement.

Mullan was indebted to the bank. The nature of the indebtedness does not clearly appear; i.e., whether it was for loans directly to Mullan, or was upon the endorsement by Mullan of notes of others, or both. In any event, there was a pre-existing indebtedness. There is evidence that Mullan had given the bank authority to charge his account upon delinquency in his own

indebtedness or upon failure of payment of certain notes which he had endorsed.

The controversy arose when the bank charged Mullan's account for his debt to the bank. The amount taken by the bookkeeping entry included the funds belonging to the insurance company. The question is whether the bank may thus seize funds belonging to the insurance company which were held in trust by one of its depositors, the insurance agent, to satisfy the debt owed by the agent to the bank. While there were some circumstances which, it is argued, gave rise to notice of the trust relationship, we shall assume that the bank had no knowledge that the funds belonged to the insurance company. There are no allegations, and there is no evidence, that the bank had in any way changed its position to its detriment, that superior equities had arisen in its favor, or that it suffered any loss from the transaction except, of course, the loss it might suffer if it is required to surrender the funds to the insurance company.

When the bank has knowledge that the funds in the account of one of its depositors are trust funds, or if it has knowledge of sufficient facts to charge it with notice, it is the uniform rule that it may not seize and retain the funds held in trust in order to offset a debt of the depositor. *Steere v. Stockyards National Bank*, 113 Tex. 387, 256 S.W. 586 (1923); *Interstate National Bank v. Claxton*, 97 Tex. 569, 80 S.W. 604 (1904); 9 Corpus Juris Secundum 626, Banks & Banking § 302.

When the bank has no such knowledge or notice, there is a sharp division of authority. The split is recognized and discussed in annotations in 13 A.L.R. 324, 31 A.L.R. 756, and 50 A.L.R. 632; in 9 C.J.S. 627, 628; in 7 American Jurisprudence 463; 5A Michie, *Banks and Banking* §§ 132, 136, and 141; and notes, 38 Harvard Law Review 800 and 824; 5 Minnesota Law Review 470, and 13 Minnesota Law Review 242.

According to the above authorities, most states have held that when the bank has no knowledge or notice, it has the right to apply the funds on deposit against the fiduciary's individual indebtedness. The holdings are based upon the "ancient foundation that money has no earmarks and therefore when honestly taken can be kept." What is meant is that when money has been honestly received, for what is regarded by these authorities as a consideration and without notice, in the independent right

of the taker, himself, as in payment of a debt, it may be kept. See 6 Williston, *Contracts* (Rev. ed. 1936), 5124, §1805.

But a substantial minority of states which apply the "federal" or "equitable" rule have held that the bank may not apply such funds to the individual debt of the depositor if there has been no change in the bank's position to its detriment and no superior equities have been raised in its favor. See Annotations, 13 A.L.R. 324 at 330, 31 A.L.R. 756 at 757, and 50 A.L.R. 632 at 634. Among the jurisdictions following this view are federal cases and the states of South Dakota, Minnesota, Nebraska, Oklahoma, Rhode Island, Colorado, Michigan, and Indiana.[1]

One of the early leading cases is Shotwell v. Sioux Falls Savings Bank, 34 S.D. 109, 147 N.W. 288 (1914), where the South Dakota Supreme Court held:

"* * * where a bank has innocently taken from one not the true owner thereof money, drafts, or checks, and applied the same upon a debt or overdraft, and, relying upon such deposit and application thereof, has placed itself in a position where it would be inequitable to require it to account to the true owner of the fund, the bank should not be holden to the true owner of such fund. We deny that there is any recognized principle of law, or even any reason founded upon that

---

1. U.S.: Bank of Metropolis v. New England Bank, 1848 6 How. 212, (47 U.S., 212); Fulton Nat. Bank v. Hosier, 295 Fed. 611 (5th Cir. 1923), noted 38 Harv. L. Rev. 824, rev. on other grounds (jurisdiction), 267 U.S. 276; Johnson v. Robinson, 203 F.2d 135 (5th Cir. 1953); Atlanta & St. A. B. Ry. v. Barnes, 95 F.2d 273 (5th Cir. 1938); George D. Harter Bank of Canton, Ohio v. Inglis, 6 F.2d 841 (6th Cir. 1925).

South Dakota: Shotwell v. Sioux Falls Savings Bank, 34 S.D. 109, 147 N.W. 288 (1914).

Minnesota: Agard v. People's Nat. Bank, Shakopee, 169 Minn. 438, 211 N.W. 825, 50 A.L.R. 629 (1927); Berg v. Union State Bank, 179 Minn. 191, 229 N.W. 102 (1930); Platt v. Metropolitan Nat. Bank of Minneapolis, 130 Minn. 219, 153 N.W. 514 (1915).

Nebraska: Meier v. Geldis, 148 Neb. 561, 28 N.W. 2d 140 (1947); Union Stockyards National Bank v. Campbell, 2 Neb. 72, 96 N.W. 608 (1901).

Oklahoma: National Bank of Commerce at Hugo v. Whitten, 190 Okla. 449, 124 P. 2d 990 (1942); Brady v. American National Bank of Oklahoma City, 120 Okla. 159, 250 P. 1006 (1926).

Rhode Island: Hungerford v. Curtis, 43 R.I. 124, 110 A. 650 (1920).

Colorado: Cox v. Metropolitan State Bank, 138 Colo. 576, 336 P.2d 742 (1959).

Michigan: Burtnett v. First National Bank, 38 Mich. 630 (1878).

Indiana: Peoples State Bank v. Caterpillar Tractor Co., 213 Ind. 235, 12 N.E. 2d 123 (1938).

necessity which is said to know no law, that will sustain either the justice or necessity of holding that, when a fund, even though it consists of money, can be fully and clearly traced into the hands of one who has neither paid a valuable consideration therefor nor changed his relation to the person from whom the fund was received, so as to give rise to any equitable defense against the claims of the true owner of such fund, —when one man has money which in equity and good conscience belongs to another, —such fund should not be recovered by the equitable owner thereof. Applying, without limitation, the rule contended for by respondent, would permit a bank to retain, as against the true owner, money procured through highway robbery, and deposited by the robber to meet an overdraft * * *. We refuse to adopt any rule that must lead to such results." 147 N.W. at 290.

The question was recently before the Supreme Court of Colorado. That court had previously adhered to what is referred to as the majority rule. The question to be decided by that court included these elements: "* * * and the bank accepts the deposit without knowledge that the agent holds the money in trust for the benefit of his principal, and sets off the amount of the debt of the agent against the deposit * * *."

The court stated:

"We have read many reported decisions from several jurisdictions and are of the firm conviction that the so-called 'federal' or 'equitable' rule is best supported by reason and best serves the demands of justice. Notwithstanding that former decisions of this court may have seemed to commit us, we have given the problems presented a thorough re-investigation and have determined now, and hereafter, to follow the 'equitable' rule." Cox v. Metropolitan State Bank, Inc., 336 P.2d 742, at 747 (1959).

Likewise the Supreme Court of Oklahoma has held:

"* * * the lack of notice to the bank of the trust character of such deposits is unimportant, unless that by reason of the lack of notice and relying upon the depositor's apparent ownership * * * the bank has changed its position to its injury." 250 P. 1006, at 1008 (1926).

While there have been no opinions by this Court on this ques-

tion, the Texas Courts of Civil Appeals have uniformly adopted the "equitable" rule. In the early case of *Davis v. Panhandle National Bank*, 29 S.W. 926 (no writ history, 1895), the court held:

> "* * * appellant requested a charge to the effect that he was entitled to judgment against the bank for the $857.82 applied to Hancock's indebtedness, *irrespective of the question of notice* on the part of appellees that the money so applied belonged to him. Under the facts of this case, we are of the opinion that such a charge should have been given. There is neither allegation nor evidence that the bank lost its debt upon Hancock by reason of this transaction * * *. We do not see upon what principle it should be allowed to retain this money." (Emphasis ours) 29 S.W. 926.

Similarly, in *First National Bank of Greenville v. First State Bank of Campbell*, 252 S.W. 1089 (no writ history, 1923), the bank applied a deposit of trust funds by Gilbreath in his account to satisfy his antecedent debt. Regardless of the question of notice, the bank was required to account for the funds: "Its [the bank's] position was in no way changed or prejudiced. To require payment of the funds * * * leaves the appellant bank in precisely the same situation where it stood at the time the deposit was made in relation to Gilbreath's indebtedness to it."[2]

The rule in other state and federal courts was recently reviewed by the Houston Court of Civil Appeals in *Cassidy Commission Co. v. Security State Bank*, 333 S.W. 2d 454 (no writ history, 1960). That court recognized the division of authority and deliberately adopted the rule applicable in the lesser number of states "even though the bank had no notice of the character of the funds * * * unless the bank has in some way changed its position to its detriment. The rule is based on the superior equity in the real owner of the funds." 333 S.W. 2d at 459. The court concluded:

---

2. By dictum, the Dallas Court of Civil Appeals in Curtis v. Hart, 1930 26 S.W. 2d 420 (no writ history, 1930), recognized this rule: "If the proceeds arising from the sale of the cotton raised on the Curtis farm were, when deposited in the bank by Hart, impressed with a trust in favor of Mr. Curtis to the extent of the rent note, plaintiffs (Curtis) should prevail, and this without regard to whether the bank did or did not have knowledge or notice of the existence of the trust. This because the bank could not be permitted to occupy the vantage ground of innocency, if it applied the trust fund in satisfaction of an antecedent debt due it by the trustee." (p. 421)

"We are thoroughly convinced that the so-called minority view is founded on sounder reasoning and equity and we, therefore, hold that under the facts of this case * * * appellee [bank] was liable to appellant to the extent that appellee [bank] applied appellant's funds in Cook's account to the note of Cook." 333 S.W. 2d at 460.

While the opinions of the Courts of Civil Appeals are not binding on this Court, they and other authorities cited above are persuasive. And like the Houston Court of Civil Appeals and the Supreme Court of Colorado, we believe the "equitable" rule is supported by the sounder reason and equity. As stated above, the bank in this case in no way changed its position to its detriment and no superior equities arose in its favor. It simply charged Mullan's account, containing funds held by Mullan in trust for the insurance company, to satisfy the bank's claim against Mullan. We hold that under the rule which we regard as being applicable in this State, it cannot do so.

The bank relies upon provisions of the Texas Banking Code, Article 342-709, Vernon's Texas Civil Statutes Annotated. That article is not applicable to the situation now before the Court. *Pacific Indemnity Co. v. Grand Avenue State Bank of Dallas*, 232 F. 2d 513 (5th Cir. 1955).

The judgments of the courts below are reversed and judgment is here rendered for the petitioner.

Opinion delivered July 26, 1961.