**CONTINENTAL NATIONAL BANK OF FORT WORTH, Appellant,**

v.

**GREAT AMERICAN MANAGEMENT AND INVESTMENT, INC., Appellee.**

No. 18294.

Court of Civil Appeals of Texas, Fort Worth.

Sept. 18, 1980.

Rehearing Denied Oct. 16, 1980.

Shannon, Gracey, Ratliff & Miller and James D. Matthews and David E. Keltner, Fort Worth, for appellant.

Cantey, Hanger, Gooch, Munn & Collins and Michael A. McConnell, Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

Plaintiffs Great American Management and Investment, Inc. and Ryan Mortgage Company brought suit against defendant Continental National Bank of Fort Worth, to recover $195,650.00. Such amount it alleged to have been converted by the bank by its transfer from account in the name of Hidden Valley Country Club Estates in which account Great American, hereinafter termed GAMI, had made a deposit of its funds under circumstances constituting a trust of which Hidden Valley was trustee; that the bank was on notice thereof at the material time, with consequence that it knew—or should have known—that GAMI's claim was superior.

Ryan Mortgage Company's interest may be generally disregarded in view of its non-suit and dismissal, permitted by the Court. Hidden Valley owed past due indebtedness to the bank in the amount transferred out of the account at time of its seizure and there is no question of the bank's right of seizure had the GAMI claim not existed.

Following trial before the court on an agreed statement of facts judgment was rendered for GAMI and against the bank for the $195,650.00. Therefrom the bank appealed.

We affirm.

Hidden Valley Country Club Estates, Inc. (Hidden Valley), a Texas corporation, undertook the acquisition and development of a one thousand acre tract of land known as the "Bursey Ranch" in Keller, Tarrant County, Texas. Financing for the acquisition and development of the property was provided by Great American Mortgage Investors, (GAMI), a Massachusetts Business Trust located in Atlanta, Georgia. The actual management and supervision of the project was handled by Ryan Mortgage Company of Arlington, Texas pursuant to contracts between GAMI, Hidden Valley, and Ryan.

It was September, 1973, that Hidden Valley and GAMI entered into a Development Loan Agreement whereby GAMI agreed to lend Hidden Valley up to $6,576,000.00 for the purpose of acquiring and developing the property. The loan was in the form of a promissory note from Hidden Valley to GAMI, with payment secured by a Deed of Trust executed by Hidden Valley to GAMI on the tract of land to be developed.

As provided by the Development Loan Agreement, funds were disbursed to Hidden Valley by GAMI in the form of "advances" for the sole purpose of paying costs and expenses of Hidden Valley actually incurred in, and directly related to, the acquisition and development of the property.

During the same time period, Hidden Valley entered into a Real Estate Development Employment Contract with Ryan for the management and supervision of the property. As part of its responsibilities under the Development Loan Agreement, Hidden Valley and Ryan established and maintained a bank account under Account Number 024-108-3 at the Continental National Bank of Fort Worth (bank), as a separate account for the purpose, into which account all the GAMI advances were paid.

The bank had knowledge that the funds deposited into the Hidden Valley account were GAMI funds advanced for the acquisition and development of the Hidden Valley property and no other purpose—and that upon disbursement from the account for such purposes GAMI's security was the premises as thereby developed (rather than in the funds in the Hidden Valley account where GAMI had deposited them.)

Two signatures were required on any check drawn on the account, one signature to be an officer of Ryan and the other signature to be an officer of Hidden Valley.

In order to make the interim development loan, GAMI required Hidden Valley to obtain for it a letter of credit issued by a third party in the amount of $190,000.00. The Continental National Bank of Fort Worth, (bank) issued such letter of credit on October 5, 1973.

One year later, on October 9, 1974, GAMI made demand upon the Bank to comply with the terms thereof, and shortly thereafter, the Bank paid GAMI $190,000.00 pursuant to the letter of credit. When that occurred Hidden Valley signed a promissory note payable to the bank in the principal sum of $190,000.00. (This note having become past due and unpaid the bank concluded it should pay itself from the funds on deposit in the Hidden Valley account–where the funds supplied by GAMI, not yet disbursed, resided at the time.)

After several advances had been made by GAMI to cover the costs of preliminary engineering and planning work, Ryan sent it a routine funding request in October, 1975 for the total amount of $224,127.06. GAMI charged its note from Hidden Valley in accordance and on October 14, 1975 wired said amount for deposit into the Hidden Valley account with the defendant bank.

The next day, October 15, 1975, the bank "offset" the sum due and owing by Hidden Valley in the amount of $195,650.00 from the account and seized and applied these funds against the Hidden Valley promissory note (originally for $190,000.00).

GAMI and Ryan immediately filed this suit to recover the sum offset and applied to the indebtedness of Hidden Valley.

Pursuant to Tex.R.Civ.P. 263, the parties submitted an Agreed Statement of Facts to the Court as constituting all the facts involved in the case. They agreed that this case could be determined by the Court solely upon such Agreed Statement of Facts. Trial was held March 2, 1979.

September 21, 1979 the Court rendered Judgment in favor of Great American Mortgage Investors (GAMI) for $195,650.00 plus interest. The GAMI prayer for exemplary damages was denied. After the entry of judgment, the bank filed its request for Findings of Fact and Conclusions of Law. These were made by the Court and placed on file. Therefrom is made obvious that the Court deemed GAMI entitled to judgment because the money in question constituted trust funds in which GAMI's rights were superior to and exclusive as applied to

rights of the bank; and furthermore, that the bank was "on notice" thereof at the time the bank seized them and therefore could not retain them and defeat the GAMI claim. The Court further found that the bank had not changed its position to its injury in any justified reliance on a legal right to take the money.

The "landmark case" is *National Indemnity Co. v. Spring Branch State Bank*, 162 Tex. 521, 348 S.W.2d 528 (1961), 8 A.L.R.3d 229, with Annotation (p. 235), "Bank's Right to Apply Third Person's Funds, Deposited in Debtor's Name on Debtor's Obligation" (1966). Thereby Texas became committed to follow the "federal" or "equitable" rule, which is: When a bank which has no knowledge or notice that funds on deposit in an account of one with the bank are held as fiduciary it has the right to apply the funds on deposit against the depositor's individual indebtedness and to retain them until it is established that they were in fact held in the account by the depositor in a fiduciary capacity for another; and, even should the fact subsequently be proved, yet may have the right to retain them if, by reason of the lack of notice and because of justified reliance upon the depositor's apparent ownership, the bank has changed its position to its injury. Conversely, the bank has not the right to seize and so apply the funds where it (a) does have such knowledge, or (b) by reason of the circumstances is 'on notice' thereof or, (c) by reason of known circumstances, is charged with the duty of making the inquiry which, if made, would disclose the fact that the funds were held by the depositor as a fiduciary; and, *furthermore even where innocently seized*, the funds must be yielded up to the equitable owner when the entrustment fact is established unless he who is in possession can and does show that he has changed his position to his injury so that it would be inequitable to require him to yield up the funds.

Under the circumstances of the case under test it is initially necessary to determine whether the Hidden account did

wholly contain GAMI funds, as to which Hidden Valley was responsible to GAMI as a fiduciary. There is no question but that the plan of financing of the Hidden Valley project was according to a business usage common to present–day planned real estate development. Furthermore, all the contractual agreements of the parties were likewise in accord. A "settlor" of trust funds may be one of the beneficiaries of a trust; indeed may be the only beneficiary. By application of the law to stipulated facts of this case GAMI, as such a beneficiary, had the prior (to the bank) right to every dollar in the account until, pursuant to the Hidden Valley development there was disbursement therefrom to accomplish specific objectives. On this see, generally, Restatement of the Law, Trusts, from Sec. 1 to and inclusive of Sec. 180, "Duty with Respect to Bank Deposits." At no time was it the intent or understanding of anyone, including the bank, that anyone could treat the funds in the account as his own, or that there might be any proper disposition thereof for any purpose other than for the development of the Hidden Valley project.

As noted in the above mentioned Sec. 180 of the Restatement one of the duties of a trustee is to "earmark" the deposit as one by the depositor as trustee. To do so not only protects the trustee and beneficiary but also protects the bank or depository into which the trust funds might go. Thereby the bank is enabled to know that the account is not one which might be seized with impunity should the trustee, as an individual apart from his capacity as a fiduciary, become a debtor to the bank. The bank, supposedly, is in this manner protected from embarrassing liability to any trust beneficiary through the mistaken seizure of his funds in the belief they are funds of him in whose name the account is maintained. By the stipulation of the parties in the instant case the necessary precautions were taken because the bank knew that the account was established for the fiduciary purpose of a development loan program and that it was the funds of GAMI, advanced pursuant thereto, which were being deposited into the account for disbursement therefrom in the accomplishment of the purpose.

Applying the "federal" or "equitable" rule to the situation the bank's seizure of the funds in the Hidden Valley account was forbidden in the beginning; and, even had that not been the case, as the stipulations effectively conceded, the bank was properly adjudged liable, because of its inability to show once the fiduciary character of the funds had been proved that it had changed its position to its injury upon and following the seizure. On this we might observe that the bank has found itself unable to claim benefit under any equitable principle.

In its brief the bank made presentation, as follows: that even if the judgment might be correct, Hidden Valley would still owe its debt to the bank; that, subsequent to the filing of the lawsuit GAMI has protected itself by foreclosing upon the collateral securing the Hidden Valley debt, so that it now owns 100% of the Hidden Valley corporate stock; and, further, that GAMI has caused foreclosure under the Deeds of Trust of all the real estate, and bought it in the same at the Trustee's Sale so that it now owns all the realty involved in the project and owns Hidden Valley. Thus, says the bank, GAMI has received the benefit of the loan made by the bank to Hidden Valley (made in connection with the demand on the Letter of Credit) which will never be repaid to the bank, and owns all the security in realty. The implication is that it is unjust for the bank to be compelled by the judgment in this case to pay the GAMI demand for $195,650.00. The claim is that the judgment for GAMI results in inequity and does not do equity. (Apparently Hidden Valley has "gone broke" and has nothing remaining to apply to its debt to the bank.)

On the foregoing we take occasion to observe that a favorite of equity is one who is vigilant and vigorously pursues his remedy. The bank could have taken the gamble of becoming a purchaser at the foreclosures effected by GAMI, but chose not to do so. GAMI has ended up with benefits, it is supposed, but if that is what it obtained by purchases at the foreclosure sales it was

because it chose to gamble when the bank did not. Whether or not it benefitted is unimportant to the issues involved in this case. Nothing in the above enables the bank to claim any benefit under any equitable principle.

Since the evidence showed that the bank knew or should have known of the GAMI equitable claim, with the bank's claim having no connections with the funds in dispute, the bank was required to recognize GAMI's equitable ownership–and could not justifiably pay itself out of or otherwise handle the account to the detriment of GAMI. *Pacific Indemnity Company v. Grand Avenue State Bank of Dallas, Texas,* 223 F.2d 513 (5th Cir. 1955). Even were this not so, the stipulated evidence established the GAMI prior equity and the bank has never changed its position to its detriment.

Judgment is affirmed.