The **FIRST NATIONAL BANK OF AMARILLO, Appellant,**

v.

**ARROW OIL & GAS, INC., et al., Appellees.**

No. 07–90–0227–CV.

Court of Appeals of Texas, Amarillo.

Oct. 14, 1991.

Morris, Moore, Dalyrimple, Moss & Thomas, P.C., David H. Thomas, III, Amarillo, for appellant.

Stokes & Fields, Daniel W. Burrows, Amarillo, for appellees.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

The First National Bank of Amarillo appeals from a summary judgment decreeing that the Bank wrongfully set off the general deposit account of Dawson Operating Company, Inc. Concluding that the trial court correctly denied the setoff by application of the equitable exception to the Bank's general right of setoff, we will affirm.

Dawson Operating Company, Inc., whose president was H.C. Bryan Dawson, was an operator of wells, one of which was the Bernstein No. 1 gas well. The Company maintained with the Bank a general deposit account, no. 76–8413 under the name "Dawson Operating Company, Inc., Mineral Account." The account was used primarily as a depository for payments the purchasers of production from the wells made to the Company for the owners of working and royalty interests in the wells.

On 31 July 1987, a check made payable only to the Company in the sum of $6,003.04, issued as the June gas runs on the Bernstein No. 1 well, was deposited in the account. On 6 August 1987, and before the Company disbursed the funds to the working interest and royalty owners, the Bank setoff $19,579.38 from the account to apply to a debt owed the Bank by the Company. At the time, the Bank was not aware that any funds in the account were held in trust for third parties.

Approximately two months later, one of the working interest owners notified the Bank that the funds belonged to him and other claimants, and requested payment. The Bank did not honor the request. Subsequently, Arrow Oil & Gas, Inc., an Oklahoma corporation, became the operator of the Bernstein No. 1 well. In January of 1988, Arrow, as the owner of a working interest in the well and the agent for the other working interest and royalty owners,[1] notified the Bank that the $6,003.04 deposited on 31 July 1987, rightfully belonged to them, and demanded its return. The Bank refused the demand.

Afterwards, on 4 February 1988, the Bank filed a declaratory judgment action to establish that it had not wrongfully converted the funds. Arrow Oil & Gas, Inc. and the other owners of working interests and royalties in the Bernstein No. 1 well, collectively referred to as Arrow, answered with a general denial and then counter-

---

1. The other owner-appellees are Myrtle Bernstein, Allene Bayless, and Allan J. Stearns, royalty owners; Hanna Resources, H.G. Freede, Inc., Z.G. Exploration, Inc., Sunshine Exploration Company, Ray B. Petty, Mary Jane Petty, D.

Vernon Camp, William H. Cockerell, David C. Hamrick, Steven R. Russell, Robert W. Ratliff, Redco Energy, Inc., and George S. Johnson, working interest owners.

claimed for the ownership of the funds. In answering and generally denying the counterclaim, the Bank alleged that on 29 March 1988, it had recovered a judgment against Dawson and the Company for the amount of their debts and note obligations to the Bank, less the credited $6,003.04 setoff.[2]

Later, on 3 July 1989, Arrow moved, with supporting documents, for summary judgment on the ground that, as a matter of law, the $6,003.04 was held in trust for the working interest and royalty owners and was not subject to the Bank's right of setoff. The Bank responded to the motion for summary judgment and, relying upon its submitted documents and perceived deficiencies in Arrow's documents, alleged the existence of eight material fact issues concerning the nature of account no. 76–8413 and Arrows's right to the $6,003.04, and denied that Arrow had established the account was a "special" account of trust, or that there was an "equitable exception" to the Bank's right of setoff.

The trial court, finding that the Bank had no knowledge or notice that any trust agreement existed between Dawson and the working interest and royalty owners, nevertheless was persuaded that *National Indemnity Co. v. Spring Branch State Bank*, 162 Tex. 521, 348 S.W.2d 528 (1961), in which the Supreme Court adopted the "equitable" exception to the bank's right of setoff as the rule in Texas, controlled the summary judgment proof to support Arrow's entitlement to judgment. Thereupon, the court granted Arrow's motion, denied the Bank declaratory relief, and rendered summary judgment accordingly.

With two points of error, the Bank contends that (1) the existence of fact issues precluded summary judgment, and (2) the court erred in the application of the law of setoff. In this regard, it is noticed that Arrow presented summary judgment evidence sufficient to establish as a matter of law that it and its principals were the record owners of the working interests and

royalties in the Bernstein No. 1 well; that the $6,003.04 payment was traced into the bank account of the Company, and to the Bank's setoff; and that the record owners had a trust relationship with the Company. Thus, Arrow established all elements of the theory of recovery under the "equitable" rule of *National Indemnity* presented to the trial court as a matter of law, and was entitled to summary judgment unless, as the Bank contends, the summary judgment proof establishes fact issues to avoid Arrow's entitlement to judgment or the court misapplied the law to the facts. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979).

■ In presenting its second point of error, the Bank contends that the trial court misinterpreted the law of setoff as expressed in *National Indemnity*. In that cause, Spring Branch State Bank had charged the joint business and personal account of insurance agent Mullan and his wife to satisfy a debt owed by Mullan to the bank. The funds seized included funds Mullan held in trust for National Indemnity without the knowledge of the bank, which had not otherwise changed its position to its detriment. In holding that National Indemnity was entitled to recover the funds belonging to it, the Court first noted the uniform rule that when the bank has knowledge, or is charged with notice, that the funds in the account of one of its depositors are trust funds, it may not seize and retain the funds held in trust in order to setoff a debt of the depositor. The Court next observed that when the bank has no such knowledge or notice, there is a sharp division of authority. "[M]ost states," the Court said, "have held that when the bank has no knowledge or notice, it has the right to apply the funds on deposit against the fiduciary's individual indebtedness." Then, the Court continued:

> But a substantial minority of states which apply the "federal" or "equitable" rule have held that the bank may not apply such funds to the individual debt of

2. On the Bank's application, H.C. Bryan Dawson, individually, and d/b/a Dawson Operating Co., Inc., was joined as a third-party defendant, but was later non-suited, and is not a party to this appeal.

the depositor if there has been no change in the bank's position to its detriment and no superior equities have been raised in its favor.

*National Indemnity Co. v. Spring Branch State Bank,* 348 S.W.2d at 529. Having reviewed the authorities and considerations underlying the different rules, the Court concluded, "[W]e believe the 'equitable' rule is supported by the sounder reason and equity," and regarded the rule "as being applicable in this State." *Id.* at 531.

The misinterpretation occurred, the Bank proposes, because it could not find any Texas case which interprets *National Indemnity* for the proposition that when a fiduciary or trust relationship exists between a depositor and some third party, which is wholly unknown to the banking institution, the banking institution is unable to lawfully setoff a general depository account. A review of the cases citing *National Indemnity* leads the Bank to the conclusion that those decisions interpret the Supreme Court's holding to be that if a bank has knowledge or notice that the funds deposited in an account, even a general account, are funds held in trust by the depositor for others, then the bank may not seize or retain those funds for its own benefit. *See, i.e., Happy Cattle Feeders v. First Nat. Bank,* 618 S.W.2d 424 (Tex.Civ. App.—Amarillo 1981, writ ref'd n.r.e.). However, that holding is a rephrasing of the uniform rule cited in *National Indemnity,* 348 S.W.2d at 349, and not only was there no occasion in any of the cases the Bank reviewed, save one, for the court to consider application of the "equitable" rule, but the Bank overlooked the decision in *Continental Nat. Bank v. Great American, Etc.,* 606 S.W.2d 346 (Tex.Civ.App.— Fort Worth 1980, writ ref'd n.r.e.), which recognized the continuing vitality of the "equitable" rule. *Id.* at 348–49.

The sole exception revealed by the Bank's review was *Pan American Nat. Bank v. Holiday Wines,* 580 S.W.2d 7 (Tex. Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.), upon which the Bank relies for its contention that the court misinterpreted long standing law of setoff by quoting the following passage with emphasis on its last sentence:

There are no cases which expressly limit the rule of *National Indemnity Co.,* supra, to situations where the bank has knowledge, but this can be implied from the passage of the U.C.C. and the holdings in subsequent cases. The rule remaining from *National Indemnity Co.,* supra, seems to be that a bank cannot offset an account when it has knowledge that the funds belong to one other than depositor.

*Id.* at 10. Yet, the limitation expressed by the *Pan American* court was mere obiter dictum, being articulated in connection with, but unnecessary to, the disposition of Pan American's second point of error, which was overruled by application of the uniform rule because the bank had knowledge the depositor's deposited funds, which the bank setoff to satisfy his indebtedness to the bank, belonged to another. *Id.* at 10–11.

Moreover, later authority, speaking since the adoption of the Uniform Commercial Code and the decision in *Pan American,* has consistently held that the "equitable" rule adopted in *National Indemnity* is the current and applicable law in Texas. *See Citibank (New York State), N.A. v. Interfirst Bank of Wichita Falls,* 784 F.2d 619 (5th Cir.1986); *Energetics, Inc. v. Allied Bank of Texas,* 784 F.2d 1300 (5th Cir. 1986). Both the *Citibank* court and the *Energetics* court applied the equitable rule adopted in *National Indemnity* to deny a bank the right to setoff funds in a depositor's account which were held for a third party. In its application, the *Energetics* court stated:

This equitable exception is also well established in Texas law. As adopted or recognized by the Texas Supreme Court in *National Indemnity Co. v. Spring Bank State Branch* [sic], 162 Tex. 521, 348 S.W.2d 528 (Tex.1961), it provides that a bank cannot apply funds on deposit to the individual debt of the depositor when the funds belong to a third party and are held in trust for that third party by the depositor, "if there has been no

change in the bank's position to its detriment." *Id.* 348 S.W.2d at 529. The equitable exception is not limited to funds held pursuant to an express trust but applies to any funds "held in a fiduciary capacity."

*Energetics, Inc. v. Allied Bank of Texas,* 784 F.2d at 1302.

■ Even though we are not obliged to follow these decisions of the Fifth Circuit Court, which we regard as persuasive, we are committed to follow the rule of law squarely decided by the Texas Supreme Court in the absence of its pronouncement to the contrary. *Woodard v. Texas Dept. of Human Resources,* 573 S.W.2d 596, 598 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.). Consequently, and contrary to the limitation language in *Pan American Nat. Bank v. Holiday Wines,* 580 S.W.2d at 10, we, in agreement with the trial court, adhere to the "equitable" rule adopted in *National Indemnity.*

Our adherence is not altered by the decision in *Hudnall v. Tyler Bank and Trust Company,* 458 S.W.2d 183 (Tex.1970), upon which the Bank relies in support of its position that if the bank has no prior knowledge, or notice, of the trust or fiduciary relationship between the depositor and a third party, the bank may setoff the depositor's account. *Hudnall* is distinguishable, because in that summary judgment proceeding, the issue presented to the trial court was whether the funds setoff were a special deposit, 458 S.W.2d at 186, and the question of an equitable exception to the bank's general right of setoff was neither raised nor addressed.

■ Still, the Bank, mentioning that the court found it had no knowledge or notice of any trust agreement existing between the Company and the working and royalty interest owners, submits that even if it had been on notice of a trust agreement, the equitable exception is inapplicable because it changed its position to its detriment by taking judgment against Dawson less an offset of the $6,003.04 claimed by Arrow. At the outset, it is observed that the Bank's lack of knowledge of the trust agreement does not preclude the applicability of the equitable exception, which required the return of the funds unless the Bank could show that it had changed its position to its detriment. *Energetics, Inc. v. Allied Bank of Texas,* 784 F.2d at 1303. However, the Bank did not present to the trial court the issue whether it changed its position to its detriment to avoid Arrow's entitlement to summary judgment and, as a result, it may not raise the issue on appeal. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d at 678. The Bank's second point of error is overruled.

■ Of the eight factual issues proposed by the Bank to defeat Arrow's entitlement to summary judgment, the only one unresolved under the record is whether Arrow attempted to collect the $6,003.04 from the Company. That issue is immaterial to the correct disposition of the controversy by application of the controlling rule of setoff, and Arrow's motion for summary judgment is not defeated by the existence of an immaterial fact issue. *Borg–Warner Acceptance Corp. v. C.I.T. Corp.,* 679 S.W.2d 140, 144 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.). The Bank's first point of error is overruled.

The judgment is affirmed.