

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00273-CV

| | |
|---|---|
| BETHLYN KRAKAUER, ANDREW B. BARON, DAVID C. BARSKI, DAVID K. BENNETT, MARK A. BROWN, WALTER BURGESS, LEIGH A. CHURA, WILLIAM L. FORTUNE, III, AMERICAN DIRECT MERCHANT SYSTEMS, INC., GARY AND JANE HOLCOMBE, INDIVIDUALLY AND AS TRUSTEES OF BROADHURST TRUST AND GERALD AND GRACE GORDON TRUST, PATHWAY BUILDERS, L.P., BROADHURST TRUST, GERALD AND GRACE GORDON TRUST, ROGER MOURLAM, MARK NAUGLE, MANOHAR K. SARAF, KAMLESH SISODIYA, OM-SHUBH-LABH, F.L.P., GLENN SKEHAN, KENNETH J. STRASSER, KEITH L. STRASSER, JERRY D. WAKEFIELD, MYLES WALSH, DIANE WALSH, DR. DAVID ZEHR, TRENDA BETH BROWN, AND MDW CAPITAL INVESTMENTS, LLC | APPELLANTS |

V.

| | |
|---|---|
| WELLS FARGO BANK, N.A., WELLS FARGO BANK SOUTH CENTRAL, N.A., WELLS FARGO FINANCIAL BANK, AND WELLS FARGO FINANCIAL TEXAS, INC. | APPELLEES |

----------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 153-272645-14

----------

# MEMORANDUM OPINION[1]

----------

In five issues, Appellants (the Investors) appeal from the trial court's summary judgment in favor of Appellee Wells Fargo Bank, N.A. (the Bank) on all of the Investors' claims.[2] We affirm.

## Procedural Background

The Investors sued the Bank and Teisha D. Boles—the vice president, as well as a manager and member—of Metro Buys Homes, LLC and the wife of David C. Boles, Metro's president. The Investors alleged that Metro, David, and Teisha conspired to fraudulently induce them to invest money in Metro, promising quick, high returns on their investments. The investments were secured by "allegedly valid" deeds of trust and first mortgage liens on properties. The Investors alleged that "[t]he entire operation was a fraud and a sham" because

---

[1]*See* Tex. R. App. P. 47.4.

[2]The Investors also sued Appellees Wells Fargo Financial Bank South Central, N.A., Wells Fargo Financial Bank, and Wells Fargo Financial Texas, Inc., and the trial court also granted summary judgment in favor of these banking entities on all of the Investors' claims. On appeal, the Investors do not challenge the summary judgment on their claims against these three Appellees.

2

on many occasions, Metro did not own the properties securing the investments and because David would, from time to time, issue checks to the Investors representing that the checks were for returns on the investments when they were really a return of the Investors' initial principal investment or money received from other investors.

The Investors alleged that their investment funds were fiduciary funds and that those funds were deposited primarily into one of Metro's four accounts at the Bank. The Investors claimed that their investment funds were funneled through accounts at the Bank and were used for David's and Teisha's personal use. According to the Investors, the Bank had a business relationship with Metro and David that spanned a number of years. The Investors claimed that the Bank had knowledge of Metro's business, knew that the Investors were investing money in Metro through wire transfers and checks, and knew that the funds from the Investors were fiduciary in nature.

The Investors further claimed that many of the checks Metro issued to them as purported returns or earnings on their investments were denied due to insufficient funds when the Investors tried to deposit or cash them. The Investors contended that the Bank knew about Metro's Ponzi scheme and profited from it by collecting overdraft fees, loan payments, and "bank originated debits" out of the same account into which Metro was depositing the Investors' funds.

The Investors asserted claims against the Bank for negligence, conspiracy to commit fraud, common law and statutory fraud, breach of contract, breach of

3

fiduciary duty, knowing participation in breach of fiduciary duty, and violations of the Texas Securities Act. In addition to actual and exemplary damages, the Investors prayed for attorney's fees and disgorgement. The Bank moved for traditional and no-evidence summary judgment on all of the Investors' claims. The Investors timely filed a summary judgment response and timely amended their pleadings to add causes of action for wrongful offset, unjust enrichment, money had and received, aiding and abetting common law fraud, and aiding and abetting negligence. The Investors also added a request for an accounting.

In their summary judgment response, the Investors argued, among other things, that the Bank's summary judgment motion did not address their newly-pled claims for wrongful offset, unjust enrichment, and money had and received nor did it address their request for an accounting. The day before the summary judgment hearing, the Bank filed a reply brief arguing, among other things, that the Investors' relationship with David and Metro was not a fiduciary relationship because the investments were in the form of secured loans and that, therefore, the relationship between the Investors and David and Metro was a debtor-creditor relationship and the funds were not "trust funds" or "fiduciary funds."

The trial court granted the Bank's summary judgment motion without specifying the grounds upon which it relied and severed the Investors' claims against Teisha. The Investors filed a motion for new trial, again complaining that the Bank had not sought summary judgment on the Investors' claims for wrongful offset, unjust enrichment, and money had and received and the Investors'

4

request for an accounting. The Investors also complained that the Bank's argument in its summary judgment reply—that David and Metro did not owe a fiduciary duty to the Investors—was a new summary judgment ground and asked the trial court to strike that portion of the Bank's reply. The trial court denied the Investors' motion for new trial and denied the Investors' motion to strike.

The Investors have appealed. They challenge the summary judgment against them only on their claims for wrongful offset, unjust enrichment, money had and received, an accounting, knowing participation in breach of fiduciary duty, and statutory real estate fraud. They argue on appeal that the trial court erred by granting summary judgment in favor of the Bank because (1) the Bank knew or should have known that the funds in David's and Metro's accounts at the Bank belonged to the Investors, (2) the Bank did not address the Investors' newly-pled claims, (3) the Bank asserted a new ground in its summary judgment reply, (4) there was evidence that the Bank knowingly participated in David's breach of fiduciary duty, and (5) there was evidence of statutory real estate fraud.

**Standards of Review**

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless

5

the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004).

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the

6

nonmovant unless reasonable jurors could not.  *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).  We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.  *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).  A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.  *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010), *cert. denied*, 562 U.S. 1180 (2011); *see* Tex. R. Civ. P. 166a(b), (c).

When, as here, a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories presented to the trial court and preserved for appellate review are meritorious.  *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).  When the trial court's judgment rests upon more than one independent ground or defense, the aggrieved party must assign error to each ground, or the judgment will be affirmed on the ground to which no complaint is made.  *Scott v. Galusha*, 890 S.W.2d 945, 948 (Tex. App.—Fort Worth 1994, writ denied).

**The "Trust Fund Doctrine" Claims**

Because the Investors' first three issues hinge on the application of what they call the "trust fund doctrine," we review them together.

7

Generally, when a depositor deposits funds into a bank account, the funds are unrestricted. *Mauriceville Nat'l Bank v. Zernial*, 892 S.W.2d 858, 860 (Tex. 1995). The bank is obligated to pay those funds back pursuant to the depositor's instruction, but the funds are subject to the bank's common law right of setoff. *Id.* However, a bank with knowledge of the trust character of money deposited into an account cannot use the trust fund to offset a depositor's debt. *See, e.g.*, *S. Cent. Livestock Dealers, Inc. v. Sec. State Bank of Hedley, Tex.*, 551 F.2d 1346, 1349 (5th Cir. 1977) ("Texas has long held that if a bank knows that deposits by a debtor in his own name are in fact held by him in a fiduciary capacity, then the bank may not apply such funds to the individual indebtedness of the debtor."); *Steere v. Stockyards Nat'l Bank*, 256 S.W. 586, 588 (Tex. 1923) (holding that where bank knew that deposited funds belonged not to the depositor but to the depositor's customers, bank committed conversion by using those proceeds to pay depositor's overdraft); *Cont'l Nat'l Bank v. Great Am. Mgmt. & Inv., Inc.*, 606 S.W.2d 346, 347 (Tex. Civ. App.—Fort Worth 1980, writ ref'd n.r.e.) (concluding that bank committed conversion when it had pre-deposit knowledge that all funds deposited were advanced for a particular purpose); *see also Mauriceville Nat'l Bank*, 892 S.W.2d at 859–60 (collecting additional cases). The Investors refer to this legal principle as the trust fund doctrine,[3] and they

---

[3]The "trust fund doctrine" also refers to "a method through which creditors are able to reach the assets of a dissolved corporation in order to pay corporate debts." Christian Otteson, *Current Application of the Trust Fund Doctrine in Texas*, 55 Baylor L. Rev. 313, 313 (2003).

base their claims for wrongful offset, unjust enrichment, and money had and received and their request for an accounting on it. Because they refer to the claims based on this principle as their trust fund doctrine claims, we will do the same.

In their first two issues, the Investors argue that the trial court erred in granting the Bank summary judgment on their trust fund doctrine claims because the funds in Metro's and David's accounts belonged to the Investors. Metro's and David's accounts were regular deposit accounts, and the Investors conceded in their summary judgment response that the accounts were not designated as trust, fiduciary, or any other type of special accounts. Nevertheless, they argue that because the bank knew or should have known that funds deposited into David's and Metro's accounts belonged to the Investors, the Bank wrongfully took funds from those accounts to pay David's lines of credit and personal loans, overdraft fees, and "bank originated debits."

As pointed out by the supreme court in *Mauriceville National Bank v. Zernial*, the line of cases relied upon by the Investors is "inapposite" because "[i]n those cases, the banks had a pre-deposit arrangement with the depositor, creating a trust or allowing the deposit of a third-party's funds." 892 S.W.2d at 860. Here, there is no evidence of a pre-deposit arrangement between Metro and the Bank or David and the Bank that the funds would be held in trust for a third-party. *See id.* at 860. The Investors point to extensive deposition testimony from Bank employees who stated that they knew that the funds deposited into

9

the accounts came from investors, but this is no evidence that the Bank knew prior to the deposit that the funds would be held in trust for a third party. Simply knowing that David and Metro were depositing money from investors is not enough to raise a fact issue as to whether the Bank knew that the funds were to be held "in trust." *See Mary E. Bivins Found. v. Highland Capital Mgmt.*, 451 S.W.3d 104, 114 (Tex. App.—Dallas 2014, no pet.) (holding that hedge fund investment manager, manager's president, and manager's chief investment officer did not owe fiduciary duty to hedge fund investor). Accordingly, we conclude that the trust fund doctrine (as that phrase has been used by the Investors in this case) does not apply to the facts of this case.

As part of their first and second issues, the Investors also argue that the trial court erred by granting summary judgment for the Bank on their trust fund claims because the Bank did not seek summary judgment on them. A trial court cannot grant summary judgment on grounds not presented in the motion. *See* Tex. R. Civ. P. 166a(c); *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) ("Granting a summary judgment on a claim not addressed in the summary judgment motion therefore is, as a general rule, reversible error."). However, "[a]lthough a trial court errs in granting a summary judgment on a cause of action not expressly presented by written motion . . . the error is harmless when the omitted cause of action is precluded as a matter of law by other grounds raised in the case." *G & H Towing*, 347 S.W.3d at 297–98.

10

The Investors amended their petition to add their trust fund doctrine claims after the Bank filed its summary judgment motion. Broadly read, the Bank's reply does not fairly address the newly-pled claims, and the Bank disavowed raising anything new in the reply at the summary judgment hearing. Thus, the Bank did not move for summary judgment on the trust fund doctrine claims. However, the Bank moved for traditional summary judgment on the Investors' breach of fiduciary duty claim on the ground that the funds were held in ordinary deposit accounts at the Bank, thereby challenging the nature of the funds on deposit. Thus, even though the trial court granted summary judgment on the trust fund doctrine claims—which were not specifically addressed in the Bank's summary judgment motion—the error was harmless because the Bank moved for summary judgment on an element common to these claims—the nature of the funds on deposit—on which the trial court found in favor of the Bank. We therefore overrule the Investors' first and second issues.

And because we have determined that the trial court could have granted summary judgment for the Bank on the grounds that the funds were held in ordinary deposit accounts and that the trust fund doctrine does not apply, we need not address the Investors' third issue complaining that the Bank's reply brief addressed a different issue than the trust fund doctrine issue and thereby raised

11

a new summary judgment ground.[4]  *See Knott*, 128 S.W.3d at 216; *Star-Telegram, Inc.*, 915 S.W.2d at 473; *see also* Tex. R. App. P. 47.1.

### Knowing Participation in Breach of Fiduciary Duty

In their fourth issue, the Investors assert the trial court erred by granting summary judgment on their claim against the Bank for knowing participation in breach of fiduciary duty.  The Investors alleged that David owed them a fiduciary duty and that the Bank, knowing that the funds on deposit were fiduciary funds and funds held in trust for their benefit by Metro and David, assisted in David's misappropriation of funds and knowingly participated by misappropriating the Investors' investments.

The Bank moved for summary judgment on this claim on both traditional and no-evidence grounds.  On appeal, the Investors argue that the Bank failed to conclusively establish that it did not "knowingly participate" in David's breach of fiduciary duty, and they do not challenge the granting of summary judgment on no-evidence grounds.  Because the Investors have failed to raise a challenge to the granting of the summary judgment on no-evidence grounds, we must affirm the summary judgment against the Investors on their claim for knowing

---

[4]Specifically, the Investors argue that in addressing their trust fund doctrine claims in its reply, the Bank asserted a new summary judgment ground—the funds David and Metro deposited at Wells Fargo were not "trust funds" or "fiduciary funds"; in other words, the funds in the account did not belong to the Investors.

12

participation in breach of fiduciary duty on those grounds. *See Scott*, 890 S.W.2d at 948. We therefore overrule the Investors' fourth issue.

## Statutory Fraud

In their fifth issue, the Investors argue that the trial court erred by granting summary judgment on their claim for statutory real estate fraud under section 27.01(d) of the business and commerce code.[5] Tex. Bus. & Com. Code Ann. § 27.01(d) (West 2015). The investors alleged that the Bank had actual awareness of the falsity of Metro's and David's representations or promises, failed to disclose the falsity of the representations or promises made to the Investors, and benefited from the false representations to the Investors' detriment. The Bank moved for summary judgment on both traditional and no-evidence grounds, alleging that it was not involved in any real estate transaction related to the lawsuit.

A claim for statutory fraud under section 27.01(d) requires:

[a] person who (1) has actual awareness of the falsity of a representation or promise made by another person and (2) fails to disclose the falsity of the representation or promise to the person defrauded, and (3) benefits from the false representation or promise commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for exemplary damages. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

---

[5]The Investors do not challenge the summary judgment against them on their statutory fraud claims under business and commerce code section 27.01(a)(1) or (a)(2). Tex. Bus. & Com. Code Ann. § 27.01(a)(1), (2) (West 2015).

*Id.* The Investors also sued the Bank for common law fraud, aiding and abetting the commission of common law fraud, and conspiracy to commit fraud. In support of each of these claims, the Investors alleged that the Bank failed to disclose the falsity of Metro's and David's representations. On appeal, the Investors do not challenge the summary judgment against them on these claims. Even though the Bank did not expressly move for summary judgment on the Investors' claim for statutory real estate fraud under section 27.01(d), any error was harmless because of the trial court's unchallenged ruling that there was no fraud by nondisclosure committed by the Bank. *See G & H Towing*, 347 S.W.3d at 297–98. Accordingly, we overrule the Investors' fifth issue.

## Conclusion

Having overruled each of the Investors' five issues, we affirm the trial court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL: GARDNER, MEIER, and SUDDERTH, JJ.

DELIVERED: October 6, 2016

14